## BROOKS v. UNITED STATES.

### (Circuit Court of Appeals, Eighth Circuit. April 24, 1906.)

### No. 2,304.

**1. Post Office—Use of Mails—Schemes to Defraud—Offenses.**

In order to make out the offense defined by Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], prohibiting the mailing of a letter in the execution or attempted execution of a scheme to defraud, there must not only be a scheme intended to defraud, but such scheme must contemplate as one of its essential parts the use of the United States post office establishment to effect its purpose, the gist of the offense being the mailing of the letter in furtherance of such scheme.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Post Office, § 55. Use of mails for schemes to defraud, see note to Timmons v. United States, 30 C. C. A. 86.]

**2. Same—Indictment.**

An indictment for mailing a letter in execution or attempted execution of a scheme to defraud in violation of Rev. Stat. § 5480 [U. S. Comp. St. 1901, p. 3696], while required to allege the particulars of the scheme with sufficient certainty to show its existence, and character, need not do so

with the same particularity as to time, place, and circumstance as is required with reference to the mailing of the letter.

"[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Post Office, § 72.]

3. SAME.

If the scheme is sufficiently outlined to show its design and adaptability to deceive, and to fairly acquaint the accused with what he is required to meet, it answers the requirement of the statute.

4. SAME.

Whether the pretensions made by the accused, which are averred to constitute the scheme to defraud, constitute an agreement, valid or otherwise, or consist of representations of fact, present or future, an expression of opinion or assurance of past, present, or future conditions, it may constitute a scheme to defraud, provided only it be designed and reasonably adapted to deceive.

5. SAME.

An indictment for mailing a letter in execution of a scheme to defraud, in violation of Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], alleged that the defendant with others by means of advertisements published in newspapers, and correspondence conducted by and through the United States mail service, pretended to be engaged under the name "National Securities Company" in a lucrative and honorable business as a broker, dealing in grain, provisions, and stocks, and pretended to be possessed of superior knowledge concerning the business, making loss improbable, and pretended to pay interest to depositors at the rate of 6 per cent. per month, and to permit withdrawals at the depositors' election, when in fact he had no such superior knowledge, did not intend for any great length of time to pay 6 per cent. per month, nor permit withdrawals at depositors' pleasure, but intended by such false pretensions to induce deposits, for the sole purpose of converting them to his own use. *Held*, that the indictment sufficiently alleged a scheme to defraud, within such section.

6. SAME—INSTRUCTIONS.

In a prosecution for mailing certain letters in execution of a scheme to defraud, in violation of Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], the court properly charged that defendant could not be convicted for devising the scheme alone, but that the gravamen of the offense rested in the mailing of the letters alleged in the indictment, and that in order to convict the jury must find that defendant placed or caused the letters to be placed in the post office, as alleged.

7. CRIMINAL LAW—DECLARATIONS OF DEFENDANT.

Where in a prosecution for mailing certain letters in furtherance of a scheme to defraud, it was charged that the letters were mailed, one on December 10, 1902, one on January 13, 1903, and another on January 29, 1903, and there was no evidence that defendant's admissions to a post office inspector concerning his operation of the scheme were not made after the mailing of the letters in question, such admissions were not erroneously admitted as made prior to the mailing of the letters.

8. SAME—EVIDENCE—EXISTENCE OF THINGS—PRESUMPTION OF CONTINUED EXISTENCE.

That the defendant had charge of the mailing of letters and literature for a fraudulent securities company in November, 1902, was insufficient to justify a presumption that he continued indefinitely thereafter in the same employment, under the rule that from proof of the existence of a certain condition of things at one time the same condition of things, if of a continuing nature, is presumed to continue until the contrary is shown.

9. POST OFFICE—SCHEME TO DEFRAUD—USE OF MAILS—MAILING LETTERS— EVIDENCE.

In a prosecution for the mailing of certain letters in furtherance of a scheme to defraud, evidence *held* sufficient to justify a finding that defendant mailed or caused the letters in question to be mailed.

**10. SAME—EVIDENCE.**

Accused did business under the name "National Securities Company." He advertised to invest deposits in grain, provisions, and securities, so as to yield his customers 6 per cent. per month, and to permit them to withdraw their deposits at their election. He sent out through the mail laudatory circulars, affidavits, and letters purporting to come from others, some of which were entitled "Do you know of something, anything better?" "Our company strong, well financed, capital full paid." "Our plan infallible, has never lost a dollar. An assured success." "Our management honest, conservative, intelligent, and experienced." "Our proposition very profitable, cannot be excelled. Our profits justify it." *Held*, that such documents in themselves constituted evidence of the existence of a scheme to defraud.

**11. SAME.**

Where, in a prosecution for mailing certain letters in furtherance of a scheme to defraud, defendant's participation in securing a certain false affidavit and laudatory letter appeared in the stock advertisements of the business in which defendant was engaged, such stock advertisements and copies of the affidavit and letter were admissible.

**12. SAME.**

In a prosecution for mailing certain letters in furtherance of a scheme to defraud, letters other than those counted on in an indictment, purporting to have been written by the company operated by defendant, to different persons throughout the country, and relating to transactions by the company with them, were admissible to show that the scheme contemplated the use of the mails, and as bearing on the intent with which the business was done, and the existence of a scheme to defraud.

In Error to the District Court of the United States for the Eastern District of Missouri.

Chester H. Krum, for plaintiff in error.

David P. Dyer, for the United States.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. Defendant was indicted, tried and convicted under the provisions of section 5480, Rev. St. [U. S. Comp. St. 1901, p. 3696], for having mailed a letter in the St. Louis post office in execution of a scheme or artifice to defraud, alleged to have been devised by him, and others, and which he intended to make effective by correspondence conducted by and through the postal establishment of the United States. The scheme as disclosed in the indictment is to the following effect: That the defendant, with others who were not put on trial with him, by means of advertisements published in newspapers and correspondence conducted by and through the United States mail service, would pretend to be engaged, under the name of National Securities Company, in a lucrative and honorable business as a broker, dealing in grain, provisions, and stocks, and would pretend to possess such superior knowledge concerning the business as would render loss improbable and would pretend to pay interest on all sums of money which any one might be induced to deposit with him at the rate of 6 per cent. per month, and permit withdrawal of any deposits at any time the depositors might desire, when in fact, he was not engaged in any lucrative or legitimate business, had no such superior knowledge, did not intend for any great length of time to pay 6 per cent. interest per month or permit withdrawals at the pleasure

of the depositors, but did intend by such false pretensions to induce the deposit of money with him for the sole purpose of converting the same, or a great part thereof, to his own use. The judgment of conviction is challenged by the defendant for three prominent reasons: Because the indictment states no offense; because there is no competent evidence showing that defendant mailed either of the letters set out in the three counts of the indictment; and because the trial court admitted irrelevant evidence consisting of certain letters emanating, or purporting to emanate, from defendant's place of business. The argument against the sufficiency of the indictment rests upon the alleged insufficiency of the averments to show a scheme or artifice to defraud.

It is argued that the pretension by defendant that he was engaged in an honorable and legitimate business, and that he had such superior knowledge of the business as to make loss improbable involves only a matter of opinion and does not create legal liability; that the pretension that defendant would pay interest on deposits at the rate of 6 per cent. per month and allow deposits to be withdrawn by depositors at their pleasure, were, in themselves, innocent, amounting only to terms and conditions of a mutual agreement, and that the denial of the reality of these pretensions adds nothing to the scheme because it was a denial of the existence of opinions, so far as they were concerned, and a qualified and evasive denial of the reality of the intention to pay the large rate of interest or to permit withdrawals by depositors when they desired. It is argued that the denials of defendant's intention to pay interest "for any great length of time" or to permit depositors "for any great length of time" to withdraw the deposits on demand afford no standard of certainty, and are of no legal significance; and that the alleged intent by means of the pretensions set forth, to secure the money of depositors and convert the greater portion thereof to his own use, states no criminal purpose because the deposit created only the relation of debtor and creditor between defendant and depositors; the money becoming the property of defendant upon the completion of the deposit. This argument is not persuasive; it dissects the averments, showing the separate elements of the scheme to defraud as if they were separately pleaded as the basis of actions at law for deceit or actions in assumpsit for the recovery of money deposited; but such is not the character of the proceeding before us.

Section 5480 denounces as a crime the mailing, among other things, of a letter in the execution or attempted execution of a scheme to defraud. This must not only be a scheme intended for the purpose of defrauding, but must contemplate as one of its essential parts, the use of the post office establishment of the United States in effecting its purpose. The gist of the offense is the mailing of the letter. Congress, under the constitutional grant of power to regulate post offices and post roads, might legislate to prevent the use of the postal establishment in carrying letters for fraudulent purposes; but could not legislate for the purpose of preventing or punishing general schemes to defraud. The existence of the scheme to defraud is a necessary

prerequisite or condition to the commission of the offense. But as the scheme may be the basis of many offenses under section 5480, dependent upon the number of letters written and mailed in its execution or attempted execution in whole or in part (Brown v. United States [C. C. A.] 143 Fed. 60; Howard v. United States, 21 C. C. A. 586, 75 Fed. 986, 34 L. R. A. 509; In re Henry, 123 U. S. 372, 8 Sup. Ct. 142, 31 L. Ed. 174), its averments cannot afford a reliable criterion to determine whether a former acquittal or conviction can be pleaded in bar to a subsequent prosecution for the same offense. For this reason, and because its execution does not constitute the gravamen of the offense, it need not necessarily be pleaded with all the certainty as to time, place and circumstance requisite in charging the writing and mailing the letters in execution of the scheme which does constitute the gravamen of the offense. Sharp v. United States (C. C. A.) 138 Fed. 878. Nevertheless, the particulars of the scheme are matters of substance, and must be set out with sufficient certainty to show its existence and character, and to fairly acquaint the accused with what he is required to meet. United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; Stokes v. United States, 157 U. S. 187, 15 Sup. Ct. 617, 39 L. Ed. 667; Stewart v. United States, 55 C. C. A. 641, 119 Fed. 89, 94; Miller v. United States, 133 Fed. 337, 66 C. C. A. 399.

Does the description of the scheme found in the indictment under consideration measure up to this requirement?

In Durland v. United States, 161 U..S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709, counsel for defendant argued much as is done in this case, that the statute only contemplates such cases as come within the definition of "false pretenses"; that the representation must be of some existing fact, and not a mere promise as to the future; that the fraudulent purpose must be something more than an intention not ,to carry out a contract, etc. The court, speaking by Mr. Justice Brewer, says:

"We cannot agree with counsel. The statute is broader than is claimed. * * * Some schemes may be promoted through mere representations and promises as to the future, yet are none the less schemes and artifices to defraud. * * * But beyond the letter of the statute is the evil sought to be remedied, which is always significant in determining the meaning. It is common knowledge that nothing is more alluring than the expectation of receiving large returns on small investments. * * * In the light of this the statute must be read, and so read, it includes everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future. The significant fact is the intent and purpose."

See, also, United States v. Flemming (D. C.) 18 Fed. 909.

The section in question read in the light of the foregoing exposition of its meaning, in our opinion, contemplates any scheme involving matters of enforceable or unenforceable contract, representation of facts, expression of opinions, or assurances of past, present or future conditions, provided only it was designed and reasonably adapted to deceive and defraud. The most successful schemes to defraud are those dressed in the garb of honesty and hedged about with all the appearances of legal and enforceable undertakings. If the intent and purpose is to deceive and defraud the unwary it matters not what form the project is made to take.

Tested ·by the foregoing, we think the scheme alleged to have been devised by the defendant comes fairly within the statute, and is sufficiently outlined to show its design and adaptability to deceive, to inform defendant of its character and enable him to take issue thereon and prepare to meet it. It appeals to one of the strongest of human passions—the love of speedy and large returns on small investments. It assures the public of such a superior knowledge and experience as usually guarantees success. It offers that most seductive privilege of investing money at the enormous rate of 6 per cent. interest per month, only however, as long as the customer desires, with the assured right to withdraw the principal at any time. Patronizers of such schemes usually flatter themselves that they will be smart enough to foresee disaster in time to withdraw their money before the final collapse. The feature of the scheme which received the severest denunciation of defendant's learned counsel is that part of it disclosing defendant's intent not to pay the large rate of interest "for any great length of time," or permit such withdrawals "for any great length of time," but did intend by means of the representations "to induce" Stewart, and others mentioned in the indictment, to deposit money with him so that he might convert the greater part thereof to his own use. We think the feature of the scheme so denounced is its most attractive element, the one which would naturally give assurance of the greatest success. To start out with the payment, for a time, of interest as promised, and the practice of free withdrawals whenever a customer desired was very shrewd. It inspired confidence at the outset, and afterwards, when confidence was fully established, encouraged and doubtless secured large increase of deposits upon which the ultimate intent charged "to convert to his own use" could operate. The trial court did not err in overruling the demurrer to the indictment for defective or insufficient statement of a scheme to defraud.

The court properly charged the jury that defendant could not be convicted for devising the scheme alone; that the gravamen of the offense rests in the mailing of the letters set out in the three counts of the indictment, and that in order to convict they must find that the defendant placed or caused the letters to be placed in the St. Louis post office to be sent or carried to their respective addresses by mail. In response to this charge the jury found defendant guilty on each of the three counts of the indictment, thereby necessarily finding that he mailed, or caused to be mailed, the letters counted on in the indictment. Was there sufficient evidence to warrant this finding? It was of two kinds—first, in the shape of an admission made by defendant to the post office inspector in effect that he was the manager of the National Securities Company; that he practically owned and conducted its business and had charge of the publication of its advertising literature, the use of the mail and the handling of checks for money received. This testimony was objected to by defendant's counsel on the ground that the letters counted on in the indictment were charged to have been mailed, one on December 10, 1902; one on January 13, 1903, and one on January 29, 1903, and that defendant's declaration related only to his acts and doings in November, when the

declaration was claimed by defendant's counsel to have been made, and that it had no tendency to show that defendant continued doing the same things in December and January, when the letters were actually mailed. We think that objection does not give due consideration to all the evidence of the witness. There is certainly no definite statement that the declarations were made any more in November, 1902, than in February, March, or April, 1903. In fact, it appears that the witness had conversations with Brooks in each of the months mentioned, and we are not able to say from a careful scrutiny of the record, that the declarations under consideration were not made after the mailing of the letters in question. Therefore we cannot say that the court improperly permitted the same in evidence.

We cannot adopt the rule invoked by counsel for the government, that from the existence at one time of a certain condition of things the same state or condition of things is presumed to continue until the contrary is shown. That rule is limited in its application to the continuance of such conditions as are of a continuing nature. It is only things of that continuing nature that are presumed to continue. Wharton's Law of Evidence, vol. 2, § 1284. We certainly cannot say that the fact that Brooks had charge of the mailing of letters and literature for the securities company in November is in and of itself an employment of such a continuing nature as to justify us in holding that he continued indefinitely thereafter in the same employment. But the declarations of Brooks are not all the evidence bearing on his mailing, or causing to be mailed, the letters in question. Certain facts are either conceded or established by the proof. They are: (1) The defendant was the owner of the business of the securities company; (2) the letters on their face show that they relate to that business; (3) they were addressed to persons residing outside of St. Louis, and obviously intended to be carried by mail; (4) the letters were actually mailed in the St. Louis post office, as shown by the conceded fact that the envelopes bore the mailing stamp of that office; (5) the defendant had charge of the correspondence. From these facts the jury, under well-recognized rules of evidence, were entitled to draw all reasonable and fair inferences, and it was not an unwarranted exercise of their privilege in that regard to infer from such evidence alone that the defendant mailed, or caused the letters in question to be mailed.

Mr. Justice Brown, in Stokes v. United States, supra, in discussing this subject, says:

"The letters that were contained in these envelopes were proven to be in the hand writing of the defendants, or to have emanated from them. * * * and if these letters were written by the defendants and found their way into the mail, the jury would be authorized to infer that they were deposited in the mail by the defendants."

How much more is that true in this case. The defendant here not only had charge of the correspondence, but was the owner and manager of the business. The letters related to the business and were to be carried to distant parts by the postal establishment of the United States. They found their way into the post office at St. Louis, as charged in the indictment, and were received by the persons to whom

they were addressed. We think there was ample evidence to sustain the finding that the defendant mailed, or caused the letters in question to be mailed in the St. Louis post office, as charged in the indictment.

The government sought to prove the guilt of the defendant by introducing in evidence certain advertising matter circulated under the name of the National Securities Company. Some of these documents are entitled thus: "Do you know of something, anything better?" "Our company strong, well financed, capital full paid." "Our plan infallible, has never lost a dollar. An assured success." "Our management honest, conservative, intelligent, and experienced." "Our proposition very profitable, cannot be excelled. Our profits justify it."

The contents of these documents consist of extravagant laudation of the honesty, experience, and past success of the company; seductive promises and assurances to all who will patronize it; bewildering figures and statistics showing how rich one can get by investing with the securities company; profound moral, business, and philosophical reflections all skillfully adapted to prey upon the credulity and cupidity of people of little experience in the ways of the world. The documents contain what purports to be copies of letters written to the company from residents of divers towns and cities throughout the United States, gratefully acknowledging the receipt of some advertising matter or of dividends on former investments, and in many instances announcing the inclosure of drafts for further investment. They refer to affidavits, copies of which are said to be inclosed, and assure readers that the company's line of references is superior to that of any other brokerage house in the United States. These documents, in themselves, contain most convincing evidence of the existence of the fraudulent scheme charged in the indictment. Among the papers offered in evidence by the government, over the objection and exception of defendant, were printed copies of an affidavit of a man by the name of Baker, and a letter written by one Russell. Baker pretended to be an important business man of Sedalia, Mo., a large investor with the securities company; to have investigated the plan of the company and its responsibility and to cordially recommend investing with it. Russell pretended to be the cashier of a bank known as the "Century Banking Company" with an authorized capital of $100,000, and as such cashier, to certify with pleasure that the securities company "has an open account with his bank, and that its deposits were good and its business satisfactory," and, in addition, he says that he was personally acquainted with the officers of the company, and believes they will faithfully carry out their contract. The proof shows that Baker's affidavit was largely misleading and deceptive, and that Russell's pretenses to being a cashier of an independent bank were absolutely false. The testimony of both Baker and Russell directly connects Brooks with the negotiation for and securing their services in the capacities referred to, and in the execution and use of the documents in question as advertising matter, and these documents appear in and form a part of the stock advertisements to which reference has been made. The proof, therefore, of defendant's participation in securing the affidavit and letter in question and their subsequent appearance

in the stock advertisements is sufficient, if no other grounds existed, to justify the admission in evidence of such stock advertisements, and particularly the copies of the affidavit and letter in question.

It is next assigned for error that the trial court erred in admitting in evidence over defendant's objection, certain letters other than those counted on in the indictment, purporting to have been written by the securities company to different persons throughout the country, and relating to transactions of the company with them. These letters were written about the time the offenses laid in the indictment were charged to have been committed. The issue was raised concerning the character of defendant's business and the intent with which it was conducted. It was alleged to have been carried on with the intent to defraud. The letters in question were admissible as bearing on the intent with which the business was done and the existence of the scheme to defraud as charged. Castle v. Bullard, 23 How. 187, 16 L. Ed. 424; Lincoln v. Claflin, 7 Wall. 132, 19 L. Ed. 106; Butler v. Watkins, 13 Wall. 456, 464, 20 L. Ed. 629; New York Mutual Life Ins. Co. v. Armstrong, 117 U. S. 591, 599, 6 Sup. Ct. 877, 29 L. Ed. 997; United States v. Flemming (D. C.) 18 Fed. 907. They were also admissible to show that the scheme as devised contemplated the use of the United States mail service in its execution. But it is urged that they were not sufficiently authenticated as emanating from the defendant to warrant their introduction. The trial seems to have progressed below on the theory that no question was made concerning the parentage of these letters, but apart from this there is a satisfactory reason for holding that they were properly received in evidence. Without treating them individually or separately, it may be safely stated that either some of the stock advertising matter prepared and circulated by the securities company accompanied them or that a certificate of indebtedness was subsequently issued by the securities company to the addressees of the letters for money deposited with it by them, as the result of the correspondence. In most if not all instances, both of these coincidences occurred. From these facts it appears that the securities company, owned, controlled, and managed by the defendant Brooks, either directly sent the letters in question or subsequently adopted them as its work. There was no error in receiving them in evidence.

Some criticism is made of the charge of the court to the jury and of the refusal by the court to give a certain requested instruction; but after carefully considering both, we fail to discern anything prejudicial to the defendant. The charge as a whole fairly presented the issues to the jury for its determination, and the requested instruction contained a proposition of law which was not warranted by the facts of the case.

The judgment must be affirmed.