## LEMON et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   November 11, 1908.)

### No. 2,761.

**1.** POST OFFICE (§ 35*) — OFFENSES AGAINST POSTAL LAWS — USE OF MAILS TO DEFRAUD.

Rev. St. § 5480, as amended in 1889 (Act March 2, 1889, c. 393, 25 Stat. 873 [U. S. Comp. St. 1901, p. 3696]), making it a criminal offense to use the mails in the execution of schemes to defraud, although it specifically names schemes to dispose of counterfeit or spurious money, is not confined to such schemes, but by its terms embraces "any scheme or artifice to defraud."

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. § 35.*]

**2.** INDICTMENT AND INFORMATION (§ 110*)—STATUTORY OFFENSES—LANGUAGE OF STATUTE—OFFENSES AGAINST POSTAL LAWS.

An indictment under Rev. St. § 5480, as amended by Act March 2, 1889, c. 393, 25 Stat. 873 (U. S. Comp. St. 1901, p. 3696), for using the mails to defraud, need not follow the language of the statute, but it is sufficient if the averments bring the charge within the substance and true meaning of the statute.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 289, 290; Dec. Dig. § 110.*]

**3.** POST OFFICE (§ 48*)—OFFENSES AGAINST POSTAL LAWS—INDICTMENT FOR USE OF MAILS TO DEFRAUD.

An indictment under Rev. St. § 5480, as amended in 1889 (Act March 2, 1889. c. 393, 25 Stat. 873 [U. S. Comp. St. 1901, p. 3696]), which charges that defendants devised a scheme to defraud intended to be executed, and which was executed, by the use of the mail service of the United States by pretending that they were engaged in a certain solvent banking enterprise, and making other pretenses in relation thereto, which pretenses were false and were made for the purpose of inducing others to deposit money with them or to buy stock, and with the intention of appropriating such money to their own use, is sufficient to charge the offense, and need not specifically charge that defendants knew their bank to be insolvent.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 72; Dec. Dig. § 48.*]

**4.** POST OFFICE (§ 35*)—OFFENSES AGAINST POSTAL LAWS—USING MAILS TO DEFRAUD.

A letter mailed in furtherance of a scheme to defraud, in order to support an indictment under Rev. St. § 5480, as amended in 1889 (Act March 2, 1889, c. 393, 25 Stat. 873 [U. S. Comp. St. 1901, p. 3696]), need not in itself be effective to execute such scheme, but it is sufficient if it was designed for that purpose or to assist in it.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. § 35.*]

**5.** INDICTMENT AND INFORMATION (§ 196*)—WAIVER OF DEFECTS—DUPLICITY.

The objection, that an indictment is bad for duplicity must be taken by a motion to quash, demurrer, or motion to require an election, and is waived by going to trial without objection.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 635; Dec. Dig. § 196.*]

**6.** CRIMINAL LAW (§ 1143*)—APPEAL—DISCRETION OF TRIAL COURT—CONSOLIDATION OF INDICTMENTS.

The consolidation of indictments for trial is a matter within the sound discretion of the trial court, which will not be interfered with by an ap-

pellate court unless it has been abused or manifest injustice has been done.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1148.*

Consolidation of, and trial of indictments together, see note to Campbell v. H. Hackfeld & Co., 69 C. C. A. 287.]

7. CRIMINAL LAW (§ 661*)—TRIAL—RECEPTION OF EVIDENCE.

While in the investigation of charges of fraud the latitude of inquiry is wider than is allowed in many other cases, it does not justify, in the admission of evidence, a disregard of the rules of competency or relevancy.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 661.*]

8. CRIMINAL LAW (§ 419*)—EVIDENCE—HEARSAY.

On the trial of defendants charged with using the mails in the execution of a scheme to defraud, in which it was an important issue whether a bank conducted by defendants and others was honestly operated or merely used as a means for fraudulently obtaining money from innocent persons, an unauthenticated paper purporting to be a copy of a letter written by one unidentified third person to another, and making charges against the solvency and management of the bank, was not competent evidence merely because there was testimony that it had been shown to one of the defendants, and its admission was prejudicial error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 973; Dec. Dig. § 419.*]

9. CRIMINAL LAW (§ 419*)—EVIDENCE—HEARSAY.

An affidavit made to obtain an attachment in an action against a bank was inadmissible as evidence of the insolvency of the bank in a criminal case against third parties, there being no proof that a judgment was ever obtained in the action or that return of nulla bona was made by the sheriff.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 973; Dec. Dig. § 419.*]

10. CRIMINAL LAW (§ 398*)—EVIDENCE—BEST AND SECONDARY.

Where the books of account of a bank were in court in a criminal case and subject to inspection by counsel, it was competent for a witness who was familiar therewith to summarize their contents in his testimony.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 398.*]

11. WITNESSES (§ 388*)—IMPEACHMENT—INCONSISTENT STATEMENTS.

A written statement previously made by a witness is not admissible in evidence to contradict and impeach his testimony, unless it was called to his attention when on the stand.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1233; Dec. Dig. § 388.*]

12. POST OFFICE (§ 50*)—OFFENSES AGAINST POSTAL LAWS—TRIAL—INSTRUCTIONS.

Instructions requested by defendants on trial for a fraudulent use of the mails considered, and *held* properly refused.

[Ed. Note.—For other cases, see Post Office, Dec. Dig. § 50.*]

In Error to the District Court of the United States for the Western District of Arkansas.

Oscar L. Miles, for plaintiffs in error.

Ira D. Oglesby (James K. Barnes, on the brief), for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ADAMS, Circuit Judge. The plaintiffs in error, Lemon and Waller, were indicted for devising a scheme or artifice to defraud, were tried, found guilty and sentenced, and by this writ of error seek a reversal of the judgment against them. There were two indictments, which were consolidated for the purpose of the trial. One contained two and the other three counts, each charging the same general scheme, but charging the mailing of different letters or writings to different persons in the way of executing the scheme. Two other defendants jointly charged with Lemon and Waller were convicted, but, as they are not complaining, our attention is confined exclusively to those named. The several counts of the indictment charge in effect that the defendants, being officers and directors of the Southern Bank & Trust Company, of Ft. Smith, Ark., devised a scheme or artifice to defraud involving the making of false statements of the financial condition of their bank, and sending the same by mail to different persons whom they intended to defraud. The scheme was that they would represent and pretend that they were engaged in the management and conducting of a solvent banking business; that their bank was in a prosperous condition and financially able to respond to the demands of their depositors and customers; that it had capital stock amounting to $600,000, deposits amounting to $76,475, loans and discounts amounting to $393,322.83, stocks and bonds amounting to $269,520, and other attractive items unnecessary now to mention; that such representations and pretenses were made for the purpose of inducing certain persons named, and others to the grand jurors unknown, to purchase their stock, deposit money with and make loans to them, with the real intent and purpose on their part to convert the money so to be paid, deposited, and loaned to their own use.

The first count, which is fairly representative of all, charges that the defendants, on a given date and at a stated place, "did then and there voluntarily and feloniously devise a scheme and artifice to defraud, and did then and there conspire, combine and agree together to commit the act made an offense by section 5480 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3696]; that is, the said defendants conspired, confederated and agreed together in devising and in intending to devise a scheme and artifice to defraud various persons and companies out of their money," etc. The indictment proceeds with averments constituting equally a description of a scheme to defraud within the purview of section 5480 of the Revised Statutes (U. S. Comp. St. 1901, p. 3696), and a description of a substantive offense required to be pleaded in an indictment for conspiring to commit an offense within the purview of section 5440 (U. S. Comp. St. 1901, p. 3676). The allegations touching the mailing of letters to individuals named served well the double purpose of mailing letters "in and for executing the scheme to defraud" as required by section 5480, and also the purpose of the overt act "to effect the object of the conspiracy" as required by section 5440.

Seventy-four errors were originally assigned, but those relied on for reversal have been appropriately reduced to five. They are as follows: That the court erred (1) in overruling the demurrer to the

indictment and declining to instruct a verdict for defendants; (2) in admitting and excluding evidence over defendants' objection; (3) in making prejudicial remarks in the presence of the jury; (4) in its charge to the jury; and (5) in refusing to charge as requested by defendants. These will be considered in the order mentioned.

Should the demurrer to the indictment or motion for an instructed verdict, both of which present the same questions, have been sustained? It is not necessary to set them out in full. They challenge the sufficiency of the indictment for numerous reasons, which will be noticed as we proceed.

In view of the prominence given in section 5480, as amended by the act of March 2, 1889, c. 393 (25 Stat. 873 [U. S. Comp. St. 1901, p. 3696]), to the scheme or artifice "to sell * * * any counterfeit or spurious coin * * * to obtain money by what is commonly called 'sawdust swindle,' 'bills,' 'paper goods,'" etc., defendants' counsel urge that no offenses different from those just specified are contemplated by the section as amended. In this he is clearly in error. The section starts out: "If any person having devised or intending to devise any scheme or artifice to defraud;" then follows in the disjunctive the specification relied on, denouncing the schemes or artifices to sell or deal in counterfeit or spurious money, etc. There is an obvious difference between schemes to defraud and those to sell or deal in counterfeit·money. The one necessarily involves a scheme to defraud some person or persons, while the other may or may not involve such scheme. It may be only a scheme to do an unlawful act in which all concerned knowingly participate. Mr. Justice Gray, speaking for the Supreme Court, in the case of Streep v. United States, 160 U. S. 128, 132, 16 Sup. Ct. 244, 246, 40 L. Ed. 365, which concerns the construction and meaning of section 5480 as amended, says:

"The statute in very words as well as in manifest intent applies to any person who devises either a scheme to defraud or a scheme to sell counterfeit money or counterfeit obligations of the United States, provided the scheme is intended to be effected, and is effected, by communications through the post office. This indictment charged not a scheme to defraud, but a scheme to sell counterfeit obligations of the United States, and therefore no proof of a scheme to defraud was necessary to support it."

The amendment of 1889, instead of limiting, expanded the operation of the statute. It brought within its comprehension, in addition to what was there before, the subject of dealing in counterfeit and spurious money and other articles there specified. Culp v. United States, 27 C. C. A. 294, 82 Fed. 990; Milby v. United States, 57 C. C. A. 21, 120 Fed. 1; Durland v. United States, 161 U. S. 306, 313, 16 Sup. Ct. 508, 40 L. Ed. 709.

It is also contended that the indictment is bad (1) because it is not charged that the scheme or artifice as originally designed contemplated the use of the post office establishment of the United States in its execution; (2) because no averment is found in the indictment to the effect that defendants knew of the condition of their bank at the time they are alleged to have devised the scheme to defraud; and (3) because it affirmatively appears from the statements and letters set out in the several counts of the indictment that no fraudulent scheme was

contemplated. These contentions, we think, are without merit. The several counts of the indictment, instead of employing the formula of the statute in describing the scheme and artifice by the use of the words, "to be effected by opening or intending to open correspondence," etc., employ language of similar and equally efficacious import. They contain the following:

"That the post office establishment of the United States was to be used for the purpose of executing such scheme and artifice to defraud as aforesaid pursuant to said design and conspiracy by opening correspondence with * * * and by inciting such persons, * * *" etc.

Again, it is averred, in describing the scheme and artifice to defraud, in substance, that the defendants were to make and circulate through the United States mails a false statement of the financial condition of their bank. These are sufficient averments that the scheme and artifice as originally devised contemplated the use of the post office establishment of the United States to accomplish its purpose. It is not necessary to follow the language of the statute. If the averments bring the charge within the substance and true meaning of the statute, it is sufficient.

There was no need of a definite averment that defendants knew that their bank was insolvent at the time they made the alleged false pretenses concerning it. This is not an action for deceit or a criminal action for making false reports touching the condition of the bank where the scienter is indispensable; but it is a criminal charge, the essential elements of which are (1) the devising of a scheme or artifice to defraud, (2) contemplating the employment of the mail service of the United States in its execution, and (3) the actual employment of the mail service in the execution or attempted execution of the scheme. The scheme as laid in the indictment, stripped of much verbiage, is that the defendants would pretend that they were engaged in a certain solvent banking enterprise, and would hold out and pretend that they had assets in excess of liabilities, and would make other alluring pretenses of like kind, when in fact their pretenses were false and their real purpose was, through and by means of the pretenses, to induce the unwary to deposit money with them and thereby enable them to convert the same to their own use. The averments of the indictment thus epitomized disclose a scheme or artifice well designed and adapted to deceive, and describe it with sufficient certainty to show its existence and character and to fairly acquaint the accused with what they were required to meet. Such, without the certainty and particularity required in describing a substantive offense in a criminal charge, is all that is necessary in stating the first element of the offense denounced by section 5480. Brooks v. United States, 76 C. C. A. 581, 146 Fed. 223.

The contention that the statements and letters set out in the several counts of the indictment negative the alleged fraudulent scheme cannot be sustained. The mailing of a letter in the execution or attempted execution of a fraudulent scheme is the gist of the offense denounced by the statute. It is that act, and it alone, which confers jurisdiction upon the courts of the United States to punish devisers of

fraudulent schemes. The letter which is mailed is not required to recite the whole scheme or be in itself effective to execute it. All that is imperatively required is that the letter mailed should be one calculated or designed to aid or assist in the execution or attempted execution of a scheme already devised. Mr. Justice Brewer, in Durland v. United States, said:

"We do not wish to be understood as intimating that in order to constitute the offense it must be shown that the letters so mailed were of a nature calculated to be effective in carrying out the fraudulent scheme. It is enough if, having devised a scheme to defraud, the defendant, with a view of executing it, deposits in the post office letters which he thinks may assist in carrying it into effect, although in the judgment of the jury they may be absolutely ineffective therefor."

It is also urged that the indictment is bad for duplicity; that it embodies in one and the same count a charge of devising a scheme to defraud, and of conspiring to do the same thing. A most casual reading of the indictment discloses that both of these charges are made in each and every count of the indictment. They are therefore double, and would have been held bad for duplicity if seasonably challenged on that ground, either by a motion to quash, demurrer, or motion to elect, which are the three approved methods for doing it. Bishop's New Criminal Procedure, § 442. The rule against duplicity stands in the law as a privilege which may be invoked or not at the election of the defendants. 1 Bishop's New Criminal Procedure, § 442. But the defendants, instead of invoking this privilege, went to trial without objection on this ground, and the court tried the case as a scheme to defraud. It was then too late to raise this objection. It was effectually waived by defendants' conduct. Morgan v. United States, 78 C. C. A. 323, 148 Fed. 189.

Objection is made to the consolidation of the two indictments and to the ruling of the court below on defendants' motion to require the government to elect (not on the ground of duplicity, however) under what counts it would go to trial. These matters are confided to the sound discretion of the trial court, with the exercise of which we ought not to interfere except in cases where that discretion has been abused or manifest injustice has resulted. Nothing of that kind appears in this record.

This brings us to a consideration of errors assigned upon the admission and exclusion of testimony. The Old National Bank of Providence, R. I., had loaned $1,000 to the trust company, and in November, 1905, negotiations were pending for a further loan. Defendant Lemon, who then or soon after became vice president and Eastern representative of the trust company to sell its stock and secure rediscount of its paper, being then at Ft. Smith, undertook to get, and did get, from the trust company a statement of its financial condition for the Providence Bank. Metcalf, the president of that bank, was on the stand as a witness in behalf of the government. He testified that in the progress of negotiations between his bank and the trust company he acquired some information which caused him to hesitate in making the second loan until Lemon should return from Ft. Smith. He testified that Lemon returned soon after, and that he showed him a

paper bearing date November 13, 1905, purporting to be a copy of a communication from "W. H. L." to Mr. Slayden. "W. H. L." was assumed in the conversation between Metcalf and Lemon which followed to stand for W. H. Lastinger, a former cashier of the trust company, and Slayden was assumed to be a member of the firm of S. W. Slayden & Co., of Waco, Tex. There was no showing that the original document was actually written by W. H. Lastinger, or that the copy was a correct transcript of the original. There was no showing as to what Lemon said or did when this copy was shown to him; that is, whether he admitted anything, denied anything, or kept silence. As to these, the record is altogether silent. In this state of the proof the government offered the copy in evidence, and it was admitted over the defendants' objection and exception. It was a lengthy document, and contained reflections of a derogatory character to the trust company; characterized Lemon and others as promoters, aiding the enterprise with "hot air" only; declared the trust company to be in a shaky condition; informed the addressee of the letter, who seems to have been a director in the company, that "W. H. L." had assumed to act for him and had tendered his resignation as such director. This document by direct averment and innuendo conveyed the impression that the bank was unsafe and in an insolvent condition. We are unable to appreciate the attempted justification of this evidence. Neither can we discover any rational ground for its admission. In the investigation of charges of fraud the latitude of inquiry is wider than is allowed in many other cases. This is so because the intent of the parties necessarily involved in a charge of fraud is a mental condition and provable by a variety of acts, declarations, and facts which are often incompetent in the trial of other issues. But this latitude of inquiry does not justify a disregard of the rules of competency or relevancy. Even if we should treat the copy as a properly authenticated original letter written by Lastinger, a former cashier of the bank, which is making an unwarranted concession, there remain insuperable objections to its admissibility in evidence. It is not perceived how it had any tendency to illustrate the intent with which Lemon or anybody else had conducted the business of the trust company. Neither is the pretense that it served the purpose of imparting notice to Lemon of any facts worthy of consideration. The case was a criminal charge for devising a scheme to defraud, and not a civil suit for fraud and deceit in making a statement to secure a loan of money. This fact, as disclosed by many phases of the trial, seems to have been lost sight of or to have been intentionally ignored. The most important issue in the trial was whether the bank had been conducted honestly as a legitimate banking enterprise, or dishonestly as a means for looting the money of innocent patrons. The letter bore directly upon that issue, but it was nothing but hearsay evidence written by a party and to a party not concerned in the case before the court. The supposed Mr. Lastinger was permitted to testify unsworn, and without cross-examination, directly on the most vital issue in the case, and defendants were deprived of their constitutional right to be confronted with the witness against them. The letter was not only read to the jury with

the stamp of the court's approval on it as competent and trustworthy evidence, but the court went further and told the jury in effect that its contents "were binding" on Lemon. The error was a grave one, and necessarily prejudicial. Nevada Company v. Farnsworth, 42 C. C. A. 504, 102 Fed. 573.

Again, it is assigned for error that the trial court erred in admitting an affidavit made by one Robert Dawson on March 2, 1906, to secure an attachment of property of the trust company in aid of a suit begun against it that day by him, together with a writ of attachment issued thereon, and the return of the sheriff that he had seized property belonging to the bank to satisfy the demand sued for. The government's counsel contend that the affidavit and proceedings taken thereon constituted some evidence of the insolvency of the trust company. The affidavit, so far as material for the present case, reads as follows:

"Comes now the plaintiff [Dawson] and makes known to the court that the defendant above named [Southern Bank & Trust Company] is indebted to him in the sum of one thousand dollars and interest thereon; * * *, that said defendant has sold all its assets or in some other manner disposed of them in fraud of its creditors, and that the former management has left this country for parts unknown," etc.

It is noticeable that the attachment proceedings thus offered in evidence fail to show that any judgment was ever rendered against the trust company, or that any execution was ever issued thereon, or that there was any return of nulla bona by the sheriff. Conceding, without deciding, that, if the proceedings had resulted in a judgment and an execution had issued thereon, a return of nulla bona, being the act of an officer performed in the discharge of his official duty, might have constituted prima facie evidence of insolvency, it is not perceived how the affidavit of a plaintiff made to put the machinery of the courts in motion to collect a demand which may or may not be disputed can constitute any evidence in another action between different parties of any of the facts sworn to. The affidavit, taken by itself or in connection with the seizure, and return, was hearsay evidence of the most damaging character. Like the Lastinger letter, its contents bore directly upon the foremost issue in the case—that of the honesty or dishonesty with which the affairs of the trust company had been conducted. It bore the impressive stamp of verity imparted to it by the jurat attached, and naturally was accorded weight and importance by the jury. Like the Lastinger letter, it enabled the government to secure the testimony of Dawson on the vital issue involved without affording the defendants either the right to be confronted with him or to cross-examine him as a witness. Its admission involved a total disregard of fundamental safeguards to truth, and constituted a plain error, prejudicial to defendants' rights.

Ira D. Oglesby, who had been appointed receiver of the assets of the trust company and who had familiarized himself with its books of account and the value of its assets, was introduced as a witness on behalf of the government. The books of account were in court, and subject to the inspection and use of the defendants' counsel. In such circumstances it was not error to permit the receiver to summarize the

contents of the books. Wigmore on Evidence, vol. 2, § 1230. To require the reading of the entire mass to the jury would have been inconvenient and profitless. The defendants' rights were sufficiently safeguarded by the presence of the books in court and by the right to use them freely in cross-examination.

Witness Oglesby had testified at length concerning the value of the assets of the trust company. It was brought out on cross-examination that he had attached to one of his reports as receiver a statement made by him of assets and liabilities. This statement was offered in evidence by defendants, and excluded by the court on objection made by the government. It was relevant only for the purpose of impeaching the witness by proof of contradictory statements theretofore made by him. Apart from this purpose, it was clearly incompetent. The long-recognized rule is that before evidence of self-contradictory declarations or statements can be introduced for the purpose of impeachment the witness must first be fairly warned of the purpose. His attention must be definitely called to the declaration claimed to be contradictory, and to the time and place, when and where it was made. If when thus fairly warned the witness denies making the declaration, it may be introduced in evidence, not as substantive proof of the facts stated, but to contradict or neutralize the testimony given in chief. The record fails to show that the attention of the witness was called directly to any items or phases of the statement claimed to be contradictory, or that he was asked whether he made such statements, or that he denied doing so. In view of these facts, there was no error in excluding the statement. It was not in itself substantive evidence of the value of the assets, and could be made competent only by a more definite warning of the witness of the contemplated purpose.

Error is assigned upon remarks of the court during the progress of the trial, and other conduct claimed to have been prejudicial to defendants. Attention is called to the following instances as examples: Defendants' counsel offered a letter in evidence, to which the government's counsel objected. The court in ruling said: "I do not see its materiality in any way, but I will let you read it." Again defendants' counsel asked a question, to which objection was interposed by counsel for the government. The court sustained the objection. Counsel for defendants said: "We desire to save our exception, your honor." Whereupon the court responded: "Well, go ahead and save it. You have more of that in this case than anything else anyhow." Again, objection was made to a question propounded by defendants' counsel. The court in overruling the objection said: "I have no objection to that except the waste of time." These and other like remarks of the trial judge are claimed to have disparaged and belittled counsel's honest efforts in behalf of his clients, and it is claimed that the minds of the jury, generally prone to approve and act upon suggestions of the court, were unduly and prejudicially affected by them. As the judgment must be reversed for other reasons, we find no occasion to rule specifically on this assignment of error. A mere reference to the complaint made will, we are confident, be a sufficient caution

to the learned trial judge, distinguished for his general fairness and impartiality, to secure a fair and dispassionate second trial.

Requests for instructions were made by defendants' counsel and refused by the court, and upon these error is predicated. Many of the requests were based on the theory that the indictment was solely for a conspiracy to commit the offense denounced by section 5480, and embraced propositions of law applicable to that theory only. They, for reasons already pointed out, were properly refused. Others, in so far as they stated correct propositions of law applicable to the case, were substantially given in the oral charge and required no repetition. The following instruction was asked by defendants' counsel:

"One of the material averments contained in the indictment against these defendants is that the Southern Bank & Trust Company on the days named in said indictments was insolvent. If, therefore, you do not find from the evidence in this case beyond a reasonable doubt that the Southern Bank & Trust Company was insolvent on the dates of the statements introduced in evidence, you will find the defendants not guilty."

The refusal of the court to give this instruction is urged for error. There are two reasons why it was properly refused: It did not embrace the entire scheme to defraud as laid in the indictment. That scheme was not merely that the defendants would pretend that the trust company was solvent, but would pretend that it had assets largely in excess of its liabilities, and thereby more successfully induce others to deposit money with and make loans to it. The state of solvency merely would not have negatived the existence of this other feature of the scheme laid in the indictment to pretend that the trust company had assets largely in excess of its liabilities. This last-mentioned pretense manifestly would be more persuasive and more likely to succeed than a scheme to pretend that the company was merely solvent. Again, the requested instruction declared that, if the jury did not find the trust company to have been insolvent on the dates of the statements introduced in evidence, they would find the defendants not guilty. That was obviously an incorrect limitation as to time. Non constat some of the statements might have been made to effectuate the scheme or artifice to defraud after the same was devised. The charge was devising a scheme to defraud, and nothing less on this issue than a failure to find that such a scheme was devised warranted a conclusive direction to find a verdict of not guilty. Whether the trust company was insolvent at the time of the alleged devising of the scheme was an important evidential fact in the case. The instruction in question gave to it a conclusive legal effect on the issue of guilt, and was properly refused.

Other assignments of error were argued to us, but as the judgment must be reversed for reasons stated, and as we have sufficiently indicated our views on questions likely to arise on the next trial, we refrain from extending this opinion farther.

The judgment is reversed, and the cause remanded for a new trial.