## WALLER v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. June 8, 1910.)

No. 3,065.

1. CRIMINAL LAW (§ 301*)—WITHDRAWAL OF PLEA OF NOT GUILTY—MOTION TO QUASH—INDICTMENT—TIME FOR MAKING—DISCRETION OF COURT.

Where the defendant in a criminal case by leave of court withdrew his plea of not guilty and interposed a demurrer and motion to quash, which were overruled, on a second trial of the cause after limitation had run against a new indictment it was within the sound discretion of the court to refuse leave to defendant to again withdraw his plea and file a second motion to quash.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 687; Dec. Dig. § 301;* Indictment and Information, Cent. Dig. § 473.]

2. CRIMINAL LAW (§ 1167*)—APPEAL AND ERROR—REVIEW—HARMLESS ERROR.

The refusal of the court in a criminal case to permit the defendant to withdraw his plea and file a motion to quash on the ground of duplicity in joining counts charging different offenses, if erroneous, was without prejudice, where the government dismissed as to one of the counts.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3101, 3103; Dec. Dig. § 1167.*]

3. CRIMINAL LAW (§ 351*)—WITNESSES (§ 346*)—EVIDENCE—FEIGNED INSANITY BY DEFENDANT.

On the second trial of a defendant for a criminal offense it was not error to permit him to be asked on cross-examination, when testifying in his own behalf, if he did not feign insanity in the presence of the court and jury on his first trial, in which he interposed insanity as a defense, nor, on his denial, to admit the testimony of other witnesses as to his demeanor on the trial in and out of court both as affecting his credibility as a witness and as tending to show his guilt of the offense charged.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 778; Dec. Dig. § 351;* Witnesses, Cent. Dig. § 1133; Dec. Dig. § 346.*]

In Error to the District Court of the United States for the Western District of Arkansas.

Clarence C. Waller was convicted of a criminal offense, and brings error. Affirmed.

Frederick W. Lehmann (F. A. Youmans, on the brief), for plaintiff in error.

Ira D. Oglesby (John I. Worthington, on the brief), for the United States.

Before HOOK and ADAMS, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. The defendant was convicted under an indictment which charged the using of the mails in furtherance of a scheme to defraud in violation of section 5480, Rev. St. (U. S. Comp. St. 1901, p. 3696), and the crime of conspiring to commit an offense against the United States, in violation of section 5440 (page 3676). The indictment was, therefore, subject to attack for duplicity. The defendant asked leave to withdraw his plea of not guilty for the purpose of interposing this objection, which the court denied, and this rul-

ing is assigned as error. The defendant was once before tried on the same indictment and convicted; but the conviction was set aside by this court. Lemon v. U. S., 164 Fed. 953, 90 C. C. A. 617. Previous to that trial he had been permitted to withdraw his plea of not guilty in order that he might attack the indictment both by demurrer and motion to quash. The objections were heard and overruled, and the defendant then renewed his plea of not guilty. At the time of the second trial the statute of limitations had run against the offenses. If the motion to quash had been permitted and sustained, no second indictment could have been found. We think the trial court exercised a sound discretion in refusing the motion. It is also true that every just ground of complaint against the ruling was removed by the voluntary election of the government to dismiss the prosecution as to section 5440, thus leaving the indictment to stand as a charge of violating section 5480 alone.

A more serious error is assigned to the ruling of the court permitting the defendant while under cross-examination to be asked whether or not on the first trial he did not feign insanity in the presence of the court and jury. This evidence was received both as affecting the credibility of the defendant as a witness, and as tending to show his guilt of the offense charged. It was objected to not only as improper cross-examination, but as incompetent, irrelevant, and immaterial for any purpose. The defendant denied that he feigned insanity, and the government was permitted to show his demeanor by other witnesses, both in the presence of the jury and out of its presence. At the first trial he interposed his insanity as a defense.

By the great weight of authority laymen may testify on the issue of insanity, describing not only the demeanor of the alleged insane person, but also expressing their opinion as to the state of his mind. Connecticut Mutual Life Ins. Co. v. Lathrop, 111 U. S. 612, 4 Sup. Ct. 533, 28 L. Ed. 536; Wigmore on Evidence, § 1938. The jury may, of course, trust such evidence, and yet it is now urged that the jury may not, like other laymen, observe the party's demeanor in court, and trust the evidence of their own senses. The law is not thus impractical. The testimony of lay witnesses, as compared to the direct observation of the jury, is secondary, and is subject to all the errors that are inseparable from the report of past observations. If the jury may be guided by the account which lay witnesses give of their past observations, they certainly may rely upon the direct and primary evidence of their own senses. Such has been the law from at least the time of Lord Hale. The authorities are referred to by Mr. Wigmore in his scholarly work on Evidence at section 1160. On an issue of insanity courts have insisted upon the presence of the person whose mental state is under investigation, and have regarded his demeanor as a primary source of information. It may be that in the earlier cases insanity was, as a rule, madness, and demeanor would thus be a more conspicuous revelation. It is, however, impossible to draw a line between the different grades of insanity and say that demeanor as to one may be considered, and as to another should be rejected. Whenever necessary, such evidence will be supplemented

not only by the testimony of medical experts, but also by the evidence of laymen who have had an opportunity to observe the person's conduct under more varied and normal conditions than would be possible in the courtroom. The fact, however, that other sources of information are desirable, does not render the primary source of personal observation by the jury incompetent.

The demeanor of the defendant is not only proper evidence, but it is impossible to prevent the jury from observing and being influenced by it. It is, therefore, better that jurymen should have the aid of counsel and the supervision of the court in interpreting such evidence rather than be left to their own unguided impressions. The decision of Purdy v. People, 140 Ill. 46, 29 N. E. 700, may be sound as to the instruction there under review, for it failed to present the subject to the jury with such explanations as ought always to be made. The general observations of the court, however, that the demeanor of a defendant in the presence of the jury cannot be considered, do not seem to us consistent with a practical administration of the law or with the weight of authority. Boykin v. People, 22 Colo. 496, 45 Pac. 419; Wigmore on Evidence, § 274. It is truthfully said by learned counsel that there is no standard as to how a defendant upon trial for an infamous crime ought to demean himself; that exhibitions of shame, temperament, and nervous strain are likely to be interpreted as signs of a guilty conscience. The same observation, however, may be made as to a person's demeanor when arrested or suddenly charged with crime. There is no standard as to how a person ought to behave under such circumstances. Conduct will vary according to sex, age, temperament, and past experience. Still demeanor on such occasions has always been held competent evidence as bearing on the question of the defendant's consciousness of guilt. With a proper explanation of all the circumstances, it may be safely left to the jury. The same is true as to a defendant's demeanor in the courtroom while undergoing a trial for crime. His demeanor, standing alone, and unexplained, might be a wholly untrustworthy source of information; but, when taken in connection with all the circumstances developed upon such a trial, it affords a valuable element in passing upon the question of guilt or innocence.

Upon the first trial the defendant interposed as one of his defences his own insanity at the times referred to in the indictment. It was possible for him to carry on a pantomime in the presence of the jury in support of that defense. Its success would depend in large measure upon his skill. Such demeanor would be intended to influence the jury, and if skillfully performed would be successful. Can it be said that the government would not be entitled to show, as bearing on the issue of insanity, that the defendant's conduct while out of the presence of the jury was wholly inconsistent with his demeanor in their presence? On the issue of insanity the demeanor of the defendant is surely competent evidence, and why should demeanor in the courtroom be excepted from all the other experiences of life? If the defendant may play the madman in the presence of the jury for the purpose of influencing their verdict, there is no sound reason why

the government may not answer such evidence by showing that his demeanor while out of the presence of the jury is that of a perfectly rational person.

Such being the situation as to the original trial, what were the rights of the government on the second trial? If the defendant feigned insanity in the presence of the jury in support of that defense upon the first trial, his conduct may be regarded in two lights: First, it was a species of fraud perpetrated by him in the very action as to which he was upon trial. Having taken the stand as a witness in his own behalf, it was open to the government, for the purpose of affecting his credibility, to show that in his defense he had been guilty of fraud. People v. Arnold, 43 Mich. 303, 5 N. W. 385, 38 Am. Rep. 182. Such examination is one of the commonest forms of impeachment. Second, feigning insanity in the presence of the jury would be a species of fabrication of evidence, and might be shown as indicating that the defendant was himself conscious of his own guilt, and that his defense could not be made out by a production of the truth. Such evidence has always been held admissible upon the trial of a criminal charge. Basham v. Commonwealth, 87 Ky. 440, 9 S. W. 284. Other authorities are collected in Wigmore on Evidence, § 278. It is quite true that feigning insanity is a thing in itself less easy of proof than the alteration of records or the spiriting away of witnesses. That circumstance, however, goes to the weight of the evidence rather than its admissibility. The testimony in this case tended to show that on the first trial the defendant for days carried on a pantomime in the presence of the jury in support of his defense of insanity. The witnesses state that he came into the courtroom from time to time and refused to recognize his wife or confer with his counsel, and took no apparent interest in the proceeding, but sat in one place looking steadfastly out of the window at a certain point; whereas, when he was out of the courtroom his conduct and conversation were normal. The defendant explained his demeanor as due to sickness and the strain of the trial. We think the whole subject was open to investigation by cross-examination. If defendant's demeanor was willfully assumed in support of his defense of insanity, it tended to show that he was both untrustworthy as a witness and was conscious of his own guilt.

The judgment should be affirmed.