COLBURN et al. v. UNITED STATES. †

(Circuit Court of Appeals, Eighth Circuit. April 28, 1915.)

No. 4127.

1. POST OFFICE ⬤⟲48—USING MAILS TO DEFRAUD—SUFFICIENCY OF INDICTMENT.

In an indictment under Rev. St. § 5480, for using the mails in aid of a scheme to defraud, the mailing of the letter or other mentioned article which is the gist of the offense must be pleaded with great certainty as to time, place, and circumstance; but, while the devising of the scheme to defraud is a necessary prerequisite to the commission of the offense, and must be described with certainty sufficient to show its existence and character, it need not be pleaded with all the certainty requisite in charging the gist of the offense.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. ⬤⟲48.]

2. POST OFFICE ⬤⟲48—USING MAILS TO DEFRAUD—INDICTMENT—"WORTHLESS."

An indictment for using the mails in furtherance of a scheme to defraud is not bad, for repugnancy or inconsistency, because in describing the scheme to defraud it is first alleged to be to acquire a tract of worthless land, and later that the land so acquired was not worth to exceed $2 per acre; the adjective "worthless" not being a word of absolute, but of relative, signification.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. ⬤⟲48.]

3. POST OFFICE ⬤⟲50—USING MAILS TO DEFRAUD—QUESTIONS FOR JURY.

Evidence in support of an indictment for using the mails in carrying out a scheme to defraud, relating to the falsity and fraudulent character of representations made as to the value of land sold by defendants, held sufficient to justify the submission of the case to the jury.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 87–89; Dec. Dig. ⬤⟲50.

Nonmailable matter, see note to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

4. POST OFFICE ⬤⟲50—USING MAILS TO DEFRAUD—INSTRUCTIONS.

Refusal of instructions requested on trial of defendants, charged with using the mails in furtherance of a scheme to defraud, held proper.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 87–89; Dec. Dig. ⬤⟲50.]

5. CRIMINAL LAW ⬤⟲811—INSTRUCTIONS—REFUSAL OF REQUESTS.

An instruction is properly refused in a criminal case, which singles out a particular fact or matter and emphasizes it in such a way as to give it undue force, in view of other facts and of the material issue in the case.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1787, 1969–1972; Dec. Dig. ⬤⟲811.]

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Criminal prosecution by the United States against George L. Colburn and M. G. Winegar. From a judgment of conviction, defendants bring error. Affirmed.

Chester H. Krum, of St. Louis, Mo., for plaintiffs in error.

Homer Hall, Asst. U. S. Atty., of St. Louis, Mo. (Arthur L. Oliver, U. S. Atty., of St. Louis, Mo., on the brief), for the United States.

Before SANBORN, ADAMS, and SMITH, Circuit Judges.

ADAMS, Circuit Judge. Plaintiffs in error were convicted in the court below of devising a scheme to defraud and making use of the postal establishment of the United States in its execution. There were two indictments, containing in the aggregate 22 counts. One of them was based on section 5480 of the Revised Statutes, and the other on section 215 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1130 [Comp. St. 1913, § 10,385]), and these were consolidated for the purposes of a trial.

The scheme laid in each count of the indictments was that the defendants should secure in their own names or in the name of a corporation, the Washington & Choctaw Land Company, organized by them and of which they were the chief executive officers, the ownership or control of large tracts of worthless land, and should then falsely pretend and represent to the public, by advertisements in newspapers, letters circulated by mail, and otherwise, that the land was without marshes, swamps, stumps, or brush that would interfere with successful cultivation; that it was rich and fertile and of rapidly increasing value, capable of producing a great variety and large quantities of grains, fruits, nuts, and vegetables; that it presented an attractive colonization scheme, was tributary to a railroad carrying freight and passengers throughout its extent, which would furnish free passage and transportation to all locators; that it was well adapted to home building; that townsites were platted here and there on the land, which were destined to develop rapidly into large and flourishing cities, and other like glittering representations. It is then alleged that all these pretensions and representations were so made with the hope and expectation that the credulous, to whom they or some of them might come, would be attracted by their allurements and induced to purchase tracts of land and pay the price asked for the same, and thus enable defendants to convert the money to be received to their own use without giving any substantial consideration therefor.

The indictments then falsified most of these representations, and alleged, among other things, that, instead of the land being rich, fertile, and productive, and of great or rapidly increasing value, readily producing large quantities of grains, fruits, nuts, and vegetables, as represented, it was sterile, unproductive, and valueless for raising grains, fruits, nuts, and vegetables, and that it was incapable of being made fertile, productive, or valuable, and was not worth to exceed $2 per acre. The indictments in each count thereof alleged that defendants, in executing their scheme, mailed a letter which was there set out in full.

The legal sufficiency of the indictments was not questioned by demurrer or otherwise, but on arraignment the defendants entered a plea of not guilty, and the trial on the issues of fact so joined proceeded; in its progress their counsel admitted the mailing of the several letters

at the post offices and to the addressees alleged in the indictments to have been mailed in and for executing the alleged scheme to defraud. Many witnesses were produced on the part of the government, and many pamphlets, pictures, advertisements, letters, and other literature, proved to have been prepared or authorized by the defendants, were also shown in evidence, and the defendants on their part produced witnesses and other evidence. Without undertaking the laborious and useless task of analyzing this testimony, it is sufficient to say that that produced on behalf of the government, taken in the aggregate, tended to prove the devising by the defendants of the scheme to defraud as alleged in the several counts of the indictments, and the evidence produced by the defendants tended to disprove the same.

The cause was then submitted to the jury, and a verdict of guilty followed on each of the 8 counts of the first indictment and on each of the 14 counts of the second indictment, and the court sentenced each of the defendants on the first mentioned indictment, founded on section 5480 of the Revised Statutes, to pay a fine of $500 and to be imprisoned in the United States penitentiary at Leavenworth, Kan.; for the period of 18 months, and on the second mentioned indictment, founded on section 215 of the Criminal Code, to pay a fine of $500 and be imprisoned in the United States penitentiary at Leavenworth, Kan., for a period of 5 years. A motion in arrest of judgment was then filed by defendants, assigning two reasons therefor: First, that the indictments did not state facts sufficient to constitute an offense; and, second, that they failed to sufficiently advise the defendants of the charge they were called upon to meet, and did not contain averments sufficient to enable them to intelligently prepare for a trial. This motion having been overruled, the defendants sued out this writ of error.

They assign and specify for error that the court erred in denying their motion in arrest of judgment, in denying their motion for an instructed verdict in their favor, in its charge to the jury, in refusing certain requests for instructions, and in its rulings on the introduction of evidence. It is argued that the indictments are bad for repugnancy, in that they contain two inconsistent allegations of substance, and for that reason fail to so advise defendants of the nature and cause of the accusation against them as to enable them to prepare their defense. It is said this repugnancy appears in the allegation that one of the steps in the defendants' scheme to defraud was to acquire a tract of *worthless* land, and in a later allegation that the land so to be acquired was worth at least $2 an acre.

[1] In view of our former opinions in cases involving violation of section 5480, we may confidently summarize the law applicable to such cases as this as follows: (1) The gist of the offense denounced by the statutes involved in this case is the mailing of a letter or other mentioned article in the execution or attempted execution of a scheme to defraud. (2) The devising of a scheme is a necessary prerequisite or condition to the commission of the offense, but in itself constitutes no federal offense. (3) The mailing of the letter or other mentioned article, being the gist of the offense, must therefore be pleaded in an indictment with great certainty as to time, place, and circumstance, so

as thereby to advise the accused of the exact nature and cause of the accusation against him, in order that he may properly prepare his defense and be able to make use of a conviction or acquittal as a protection against a further prosecution for the same offense. (4) While the particulars of the scheme are matters of substance, and must be described with certainty sufficient to show its existence and character, and to fairly acquaint the accused with the particular fraudulent scheme charged against them, the scheme itself need not be pleaded with all the certainty as to time, place, and circumstance requisite in charging the gist of the offense, the mailing of the letter or other article, in execution or attempted execution of the scheme. Brooks v. United States, 146 Fed. 223, 76 C. C. A. 581; Lemon v. United States, 164 Fed. 953, 90 C. C. A. 617; Horn v. United States, 182 Fed. 721, 105 C. C. A. 163.

[2] Guided by the principles enunciated in the foregoing cases, we first take up the question whether the indictments were so repugnant and inconsistent as not to advise the accused of the nature and cause of the accusation against them or enable them to prepare their defense. It is contended that in describing the scheme to defraud it was first alleged to be to acquire, and that defendants did acquire, a large tract of *worthless* land, and later that the land so acquired was not worth to exceed the sum of $2 per acre; and the contention is that the two allegations, one of worthlessness and the other of value, are so inconsistent and repugnant as to vitiate the indictments.

Reading the indictments in their entirety, as we must, we think there is no merit in the contention. No land is absolutely worthless; that is, worthless for any purpose whatsoever. Land may be worthless for agricultural purposes and valuable for pasturage or grazing, or worthless, because swampy or marshy, for the purpose of raising grain, fruit, vegetables, or nuts, and yet valuable, as the proof in this case abundantly shows, for the propagation of crawfish. A building may be worthless for a residence, and at the same time valuable for a stable. In other words, the adjective "worthless" is not a word of absolute, but of relative, signification, and we think the indictments, taken as a whole, clearly advised the defendants of the meaning attributable to the word by the grand jury.

After stating and falsifying the representations alleged to have been made by defendants to the effect that the land was well adapted for agricultural and home-planting purposes, free from swamps, marshes, brush, and timber, the averment follows in close connection that it was unproductive and valueless for raising grain, fruit, nuts, or vegetables, and was incapable of being made fertile, etc. In this way the indictments themselves make it clear in what relation the word "worthless" was employed, namely, worthless for the purposes for which the land was advertised for sale.

The indictments, measured by the rule laid down in Brooks v. United States and other cases cited, disclose, in our opinion, a scheme designed and reasonably adapted to defraud, one that held out to the unsuspecting the hope of obtaining a home and competency on the expenditure of a comparatively small amount of money, and thus appeals to

223 F.—38

one of the strongest passions of reasonable men and women. The scheme is explicitly charged to have been fraudulent in its design, and entered upon by the defendants for the purpose of defrauding any person that might be attracted by its promises; and in our opinion its averments, taken as a whole and read with the real purpose to understand its meaning, are quite sufficient to advise the defendants of the nature and cause of the accusation against them and enable them to adequately prepare for trial. In fact, it seems to us that the scheme is laid with much unnecessary detail. The substance of it, as already stated, is that the defendants should secure some worthless land in Mississippi and Alabama, and disseminate through the mail false statements of the availability and value of the land for agricultural, colonization, and home-planting purposes, with the hope and expectation that the credulous to whom such statements and representations should come would, on receiving them, purchase parts of the land and pay money therefor to the defendants, which they could and would appropriate to their own use without giving adequate consideration therefor. The defendants must certainly have understood this charge against them. It presented a plain and unmistakable charge, which they could well have met, had they been able to do so.

We conclude, therefore, that there was no error in denying the motion in arrest of judgment on the ground that the indictments failed to charge an offense.

[3] The next assignment of error is that the trial court erred in overruling defendants' motion for an instructed verdict in their favor. Concerning the merits of this assignment, the main argument is that there was no proof that the lands schemed to be acquired and actually acquired by defendants were worthless, as alleged in the indictments, but, on the contrary, were proved to have had some value. For the reasons indicated in treating of the sufficiency of the indictments, we cannot adopt the suggestions of this argument.

Defendants' counsel also urge in support of this assignment that many of the separate representations made by defendants in their advertisements and correspondence were not proved to have been false in fact, but were proved substantially true; that other representations were proved to have been consonant with an honest purpose and intention on the part of the defendants; and that many of the representations concerned immaterial and trivial matters, permissible as trade talk, or as an expression of an opinion merely. Mr. Justice Brewer in rendering the decision of the Supreme Court in the case of Durland v. United States, 161 U. S. 306, 313, 16 Sup. Ct. 508, 40 L. Ed. 709, said:

"But beyond the letter of the statute is the evil sought to be remedied, which is always significant in determining the meaning. It is common knowledge that nothing is more alluring than the expectation of receiving large returns on small investments. Eagerness to take the chances of large gains lies at the foundation of all lottery schemes, and, even when the matter of chance is eliminated, any scheme or plan which holds out the prospect of receiving more than is parted with appeals to the cupidity of all. In the light of this the statute must be read. * * * It was with the purpose of protecting the public against all such intentional efforts to despoil, and to prevent the post office from being used to carry them into effect, that this

statute was passed; and it would strip it of value to confine it to such cases as disclose an actual misrepresentation as to some existing fact, and exclude those in which is only the allurement of a specious and glittering promise."

In the case of McCarthy v. United States, 187 Fed. 117, 110 C. C. A. 547, the Court of Appeals for the Second Circuit, in considering a refusal of the trial court to direct a verdict in favor of the defendants in a case wherein they were accused of devising a fraudulent scheme to work off a sandy and worthless tract of land called a "park," made use of the following language:

"The first alleged error argued in the brief is that the court refused to direct a verdict for the defendants, on the ground that there was no evidence establishing that any fraudulent scheme had been devised or operated. It is not necessary to reproduce the circulars, maps, and bird's-eye views which were exhibited to persons who responded to the first request. Without containing an absolute misstatement as to any single fact, the whole description was carefully devised to lead prospective purchasers, resident some of them in distant states, to suppose that the 'Park' was practically an extension of the well-known 'Westhampton Beach,' with its churches, schools, electric light," etc., "and that it was a 'suburban district of Greater New York.' "

After then quoting from the decision of the Supreme Court in the Durland Case, the court proceeded as follows:

"Enough was shown to send the case to the jury to decide whether the scheme involved a device reasonably calculated to deceive persons."

In this case we have no occasion to apply the doctrine so broadly. Here many material representations charged in the indictments to have been made by defendants which from their nature were calculated to attract purchasers and which taken together were reasonably adapted to deceive were proved to have been false, and the testimony taken as a whole tended strongly to show a fraudulent scheme on the part of the defendants as charged in the indictments to dispose of land represented by them to be valuable and useful for agricultural purposes which was practically worthless for those purposes. There was, therefore, no error in refusing to instruct a verdict in favor of the defendants.

[4] Defendants' counsel requested the court to give several instructions to the jury, among them one to the effect that the averment of worthlessness of the land as found in the indictments was a material averment, and that the burden was on the government to prove that a part of the scheme was to obtain land which was worthless, and which defendants knew was worthless and without any value, and that unless the government has so proven beyond a reasonable doubt the jury must acquit. This request, for reasons already stated, attributed an erroneous meaning to the adjective "worthless" and was rightly refused. Among them was another thus:

"The law indulges sellers of property in what is commonly known as 'puffing their property,' in order to induce buyers to take it at the highest price obtainable, so it was entirely lawful for the defendants to commend their property in terms of extreme commendation and to indicate that it was capable of great uses in the future and that it had possibilities of even unusual character."

In view of the fact that the charge in the indictments was that the defendants made the representations concerning the land fraudulently and with the intent and purpose of deceiving persons to whom they might come, an instruction telling the jury that the law indulges sellers in "puffing their property" to bring about sales at the highest attainable price, and otherwise as stated in the requested instruction, would have been contradictory to the general scheme of the indictments and fatally misleading, without some modification to the effect that the justifiable "puffing" must have been within the limits of honesty and fair dealing. Without such modification the instruction would have justified the jury in finding the defendants not guilty, however fraudulent their representations might have been. The request was properly denied.

[5] Error is also assigned for the refusal to give other requested instructions, but it appears that the substance or equivalent of those requested was embodied in the main charge to the jury. It was therefore no error to refuse to give them in the language as requested. Moreover, some of these requested instructions singled out a particular fact or matter, and emphasized it in such a way as to give improper force and meaning to it, in view of other facts and of the material issue in the case. Such instructions tend to mislead the jury and should not be given. Perovich v. United States, 205 U. S. 86, 92, 27 Sup. Ct. 456, 51 L. Ed. 722; Weddel v. United States, 213 Fed. 208, 210, 129 C. C. A. 552.

Exception is also taken to a certain expression in the charge of the court to the jury. As to this it is sufficient to say the particular expression criticized is so explained or so related to other parts of the charge as to be inoffensive. The entire charge must be read together, and when so read the matter complained of is unobjectionable.

Error is assigned to the admission of certain evidence over defendants' objections. We have carefully read and considered all the evidence in connection with or relating to that objected to by defendants' counsel, and in view of it all we are unable to say there was any error in the rulings of the court in the particulars complained of.

Finding no reversible error, the judgment of the District Court is affirmed.