## GLASS v. UNITED STATES.

### (Circuit Court of Appeals, Ninth Circuit. May 3, 1915.)

### No. 2485.

**1. INDICTMENT AND INFORMATION ⊂⇒125—DUPLICITY—MAILING MATTER CONCERNING LOTTERIES.**

An indictment alleging that defendants "deposited and caused to be deposited in the post office" mailing matter concerning lotteries is not duplicitous as charging two separate crimes.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 334–400; Dec. Dig. ⊂⇒ 125.]

**2. POST OFFICE ⊂⇒48—OFFENSES AGAINST POSTAL LAWS—INDICTMENT—SUFFICIENCY.**

An indictment alleging in various counts that defendants, who platted land into lots of varying size and value, and improved a few, and offered all for sale at a uniform price of $130 each, while each unimproved lot was worth from $4 to $10, while the few lots improved by buildings were valuable, willfully, knowingly, unlawfully, and feloniously deposited in the post office matter concerning the plan and in furtherance thereof, is good as to each count either under Rev. St. § 3894, or Cr. Code, § 213 (Comp. St. 1913, § 10383), punishing the depositing in the mails of matter concerning any lottery or gift enterprise.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. ⊂⇒48.

Nonmailable matter, see notes to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

**3. CRIMINAL LAW ⊂⇒1177—APPEAL—HARMLESS ERROR—MAILING MATTER CONCERNING LOTTERIES—PUNISHMENT.**

Where accused, convicted of mailing matter concerning a lottery under an indictment good either under Rev. St. § 3894, or Cr. Code, § 213, was sentenced to imprisonment and fined within the limits prescribed by section 3894, while section 213 authorized a more severe punishment, he could not complain of the extent of the punishment.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3183–3189; Dec. Dig. ⊂⇒1177.]

**4. INDICTMENT AND INFORMATION ⊂⇒99—REFERENCE FROM ONE COUNT TO ANOTHER.**

Where the first count of an indictment sets out a lottery scheme of defendants, charged with mailing matter concerning a lottery, subsequent counts charging the mailing of matter in furtherance of the scheme may refer to the scheme set out in the first count.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 270, 270½; Dec. Dig. ⊂⇒99.]

**5. INDICTMENT AND INFORMATION ⊂⇒129—JOINDER OF OFFENSES—STATUTORY PROVISIONS.**

Under Rev. St. § 1024, providing that, where there are several charges against any person for the same act or for two or more acts connected together, the whole may be joined in one indictment in separate counts, acts charged against defendant, based on their mailing matter concerning a lottery scheme or any promotion thereof, may be joined in one indictment in separate counts.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 414–418; Dec. Dig. ⊂⇒129.]

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

R. E. Glass and another were convicted of crime, and R. E. Glass brings error. Affirmed.

The plaintiff in error and one W. A. Ridgway were jointly indicted in an indictment containing ten counts, the first, second, third, fourth, and seventh of which are as follows:

"That heretofore, to wit, on or about the 13th day of April, 1909, one W. A. Ridgway and one R. E. Glass, at the city of Seattle, county of King, state of Washington, within the Western District of Washington, and within the jurisdiction of this court, then and there being, did then and there willfully, knowingly, unlawfully, and feloniously deposit and cause to be deposited in the post office of the United States of America, at said city of Seattle, to be sent and delivered by the post office establishment of the United States, a certain circular concerning a certain scheme dependent upon lot or chance, then and there being operated and conducted within the Western District of Washington by a certain corporation called 'Jovita Land Company,' and which said circular was then and there intended for the purpose of promoting, aiding, and furthering the carrying on of the business of said scheme, and which said circular, so far as can be represented and set forth herein, and omitting therefrom certain pictures and designs, was as follows:

" 'Jovita's Twelve Houses.

" 'Attractive Houses Now Being Built for Twelve Fortunate Lot Buyers.

" 'Few suburban homes in the Sound country are the equal of Jovita's magnificent $10,000 house, interior views of which are shown herewith. It was built without regard to cost and contains every modern convenience.

" 'There are 12 commodious rooms, and an 8-foot basement extends beneath the entire house. In every bedroom are marble stationary washstands. The plumbing is complete in all respects, and the water pressure is ample.

" 'Bookcases and sideboards are built in. A number of the bedroom closets are as large as ordinary rooms. The ballroom on the second floor is big enough for pretentious private dances. The pantry and kitchen arrangements are perfect. There is even an automatic fuel lift from the basement.

" 'This house, together with two acres of ground, is being sold for $130. So are the eleven other brand-new houses now in course of construction, each on a specially sightly lot. Several of the new houses are already completed, and all will be finished this summer. Each one of them is a desirable residence, suitable for the requirements of people of taste.

" 'The company is spending over $30,000 on improvements at Jovita, and all visitors wax enthusiastic over what is being accomplished. Jovita is unquestionably the most attractive suburb between Seattle and Tacoma. It is not remarkable under the circumstances that the sale of Jovita lots is beating all records, and it will be only a short time until every one of them is on contract.

" 'Jovita Land Co.<br>" 'Offices:

| | |
|---|---|
| " 'Seattle, Wash. | St. Paul, Minn. |
| " 'Tacoma, Wash. | Butte, Mont. |
| " 'Chicago | Fargo, No. Dakota. |
| " 'Minneapolis, Minn. | Missoula, Mont. |

" 'Main Office, 219–220 Epler Block, Seattle, Wash.'

"And which said circular was contained in a certain sealed envelope, then and there addressed and directed as follows, to wit:

" 'Carrie M. Buck,<br>" '212 S. Washington St.,<br>" 'Centralia, Wash.'

"And upon said envelope in the upper left-hand corner thereof, among other things, appeared the words and figures:

" 'Return in five days to
" 'Jovita Land Co.
" 'Main Office:
" '219–220 Epler Block,
" 'Seattle, Washington.'

"And which said scheme hereinbefore referred to was as follows: That the said W. A. Ridgway and R. E. Glass should acquire in the name of the Jovita Land Company, a corporation, certain vacant, unimproved lands within King county, in the Western District of Washington, which they should plat and cause to be platted into lots and blocks under the name of Jovita, which said lots should be of different and unequal values; and it was further a part of said scheme to build houses of different values upon 12 of said lots, thereby rendering said lots of more value than the other lots which were unimproved by buildings of any kind; and it was a part of said plan of said defendants to offer said lots for sale to persons throughout the United States and to enter into contracts with said purchasers, whereby said lots were to be sold to them for the sum of $130 each, but at the time of such sale the lot or lots so purchased should not be identified, but, after all of said lots were so sold and contracted to be sold, a drawing should be had by which said lots should be parceled out to each purchaser by lot and chance, which said drawing was to be conducted on said property under the supervision of said W. A. Ridgway and R. E. Glass and their agents and employés, and that, after said drawing, a deed or deeds should be issued to each purchaser conveying to him the lot or lots so drawn by him, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

"Count II.

"And the grand jurors aforesaid, upon their oaths aforesaid, do further present: That heretofore, to wit, on or about the 12th day of June, 1909, one W. A. Ridgway and one R. E. Glass, at the city of Seattle, county of King, state of Washington, within the Western District of Washington, and within the jurisdiction of this court, then and there being, did then and there willfully, knowingly, unlawfully, and feloniously deposit and cause to be deposited in the post office of the United States of America, at said city of Seattle, to be sent and delivered by the post office establishment of the United States, a certain letter concerning a certain scheme dependent upon lot or chance, then and there being operated and conducted within the Western District of Washington by a certain corporation called 'Jovita Land Company,' and which said letter was then and there intended for the purpose of promoting, aiding, and furthering the carrying on of the business of said scheme, and which said letter, omitting the letter head, was in words and figures as follows:

" 'Payment No. 4. " 'Seattle, Wash.

" 'M—— Carrie M. Buck, 212 S. Washington Ave., Centralia, Wash.: The next monthly payment of ten dollars on your Jovita lot will be due on June 16th, 1909, and is payable at our main office, 219 Epler Block, Seattle, Wash. Kindly remit by check, post office money order or express money order.

" 'Yours truly, Jovita Land Company.'

"And which said letter was contained in a certain sealed envelope, then and there addressed and directed as follows, to wit:

" 'M—— Carrie M. Buck,
" '212 S. Washington Ave.,
" 'Centralia, Wash.'

"And upon said envelope in the upper left-hand corner thereof, among other things, appeared the words and figures:

" 'Return in five days to
" 'Jovita Land Co.,
" '219–220 Epler Block, Seattle, Washington.'

"And which said scheme was the scheme hereinbefore described in the first count of this indictment, commencing with the words 'that the said W. A. Ridgway and R. E. Glass should acquire,' in lines 19 and 20, on page 3, to and including the words 'conveying to him the lot or lots so drawn by him,' in lines 11 and 12, on page 4, of said first count, and said first count within the limits aforesaid is herewith repeated and incorporated in .this second count, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

## "Count III.

"And the grand jurors aforesaid, upon their oaths aforesaid, do further present: That heretofore, to wit, on the 2d day of May, 1910, one W. A. Ridgway and one R. E. Glass, at the city of Seattle, county of King, state of Washington, within the Western District of Washington, and within the jurisdiction of this court, then and there being, did then and there willfully, knowingly, unlawfully, and feloniously deposit and cause to be deposited in the post office of the United States of America, at said city of Seattle, to be sent and delivered by the post office establishment of the United States, a certain letter and receipt concerning a certain scheme dependent upon lot or chance, then and there being operated and conducted within the Western District of Washington by a certain corporation called 'Jovita Land Company,' and which said letter and receipt were then and there intended for the purpose of promoting, aiding, and furthering the carrying on of the business of said scheme, and which said letter, omitting the letter head, was in words and figures as follows: " 'Seattle, Wash., May 2, 1910.

" 'Mr. Ira C. Luman, Centralia, Washington—Dear Sir: Herewith please find · our Final Clearance Receipt No. 1066 in return for your remittance of $10.00 covering last payment on your Jovita lot. Thanking you, we are,
" 'Yours very truly,                              Jovita Land· Company,
" 'Dict. EP/MP.                                            By E. L. P.'

"And which receipt, as near as the same can be set out in this indictment, was in words and figures as follows:

" 'Original.
" 'Jovita Land Co.        .
" 'Main Office: 219–220 Epler Block,
" 'Seattle, Washington.

" 'Final Clearance Receipt.

" 'This is to certify that we have received from Ira C. Luman, Centralia, Wash., one hundred· and thirty dollars ($130.00) in full payment for one lot in Jovita, King county, Washington, situated between Seattle and Tacoma on the Puget Sound Electric Ry. Interurban, as purchased by him upon the terms. and conditions set forth in his application to purchase same.
" '[Signed]    Jovita Land Co.,
" 'No. 1066    May 2, 1910, 190                  By R. E. Glass, Manager.
" 'R.'

"And which said scheme was the scheme hereinbefore described in the first count of this indictment, commencing with the words 'that the said W. A. Ridgway and R. E. Glass should acquire,' in lines 19 and 20, on page 3, to and including the words 'conveying to him the lot or lots so drawn by him,' in lines 11 and 12, on page 4, of said first count, and said first count within the limits aforesaid is herewith repeated and incorporated in this third count,· contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

## "Count IV.

"And the grand jurors aforesaid, upon their oaths aforesaid, do further present: That heretofore, to wit, on or about the 23d day of June, 1910, one W. A. Ridgway and one R. E. Glass, at the city of Seattle, county of King, state of Washington, within the Western District of Washington, and

within the jurisdiction of this court, then and there being, did then and there willfully, knowingly, unlawfully, and feloniously deposit and cause to be deposited in the post office of the United States of America, at said city of Seattle, to be sent and delivered by the post office establishment, of the United States, a certain letter concerning a certain scheme dependent upon lot or chance, then and there being operated and conducted within the Western District of Washington by a certain corporation called 'Jovita Land Company,' and which said letter was then and there intended for the purpose of promoting, aiding, and furthering the carrying on of the business of said scheme, and which said letter, omitting the letter head, was in words and figures as follows:

" 'Seattle, Wash., June 20, 1910.

" 'Dear Sir or Madam: The representative of Jovita lot buyers from your locality who is to attend the lot buyers meeting at Jovita, Wash., July 1, 1910, is

" 'Geo. D. James, 607 Walnut St.

" 'Herewith you will find a proxy form. You may fill out the proxy and sign it in favor of the above-named representative if you are personally unable to attend the meeting. Hand or mail it to him.

" 'Yours very truly, Jovita Land Co.'

"And which said letter was contained in a certain sealed envelope, then and there addressed and directed as follows, to wit:

" 'Mr. Ira C. Luman,
" 'Centralia, Wash.'

"And upon said envelope in the upper left-hand corner thereof, among other things, appeared the words and figures:

" 'Jovita Land Co.
" 'Main Office: 219–220 Epler Block,
" 'Seattle, Wash.'

"And which said scheme was the scheme hereinbefore described in the first count of this indictment, commencing with the words 'that the said W. A. Ridgway and R. E. Glass should acquire,' in lines 19 and 20, on page 3, to and including the words 'conveying to him the lot or lots so drawn by him,' in lines 11 and 12, on page 4, of said first count, and said first count within the limits aforesaid is herewith repeated and incorporated in this fourth count, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

## "Count VII.

"And the grand jurors aforesaid, upon their oaths aforesaid, do further present: That heretofore, to wit, on or about the 23d day of October, 1909, one W. A. Ridgway and one R. E. Glass, at the city of Seattle, county of King, state of Washington, within the Western District of Washington, and within the jurisdiction of this court, then and there being, did then and there willfully. knowingly, unlawfully, and feloniously deposit and cause to be deposited in the post office of the United States of America, at said city of Seattle, to be sent and delivered by the post office establishment of the United States, a certain letter concerning a certain scheme dependent upon lot or chance, then and there being operated and conducted within the Western District of Washington, by a certain corporation called 'Jovita Land Company,' and which said letter was then and there intended for the purpose of promoting, aiding, and furthering the carrying on of the business of said scheme, and which said letter, omitting the letter head, was in words and figures as follows:

" 'Seattle, Wash., Oct. 23, 1909.

" 'Messrs. Geo. Speicher & H. Giesy, Menlo, Wash.—Dear Sirs: Your valued application of Oct. 21st and first payment of $10.00 of a lot in Jovita has been duly received at this office through Mr. V. M. Bullard. We will mail all communications regarding same to you c/o Mr. R. V. McCash, according to instructions from Mr. Bullard. The unusual advantages afforded at Jovita have

undoubtedly been explained to you, but we might add that a better real estate proposition is not being offered anywhere in this Sound country for the amount of money involved, and the improvements we are putting on this property are increasing its value every day. We have a large force of men at work at the present time and are making rapid progress with our improvements.

"'Yours very truly, Jovita Land. Company,
"'Dict. E/P. .By E. P.'

"And which said scheme was the scheme hereinbefore described in the first count of this indictment, commencing with the words 'that the said W. A. Ridgway and R. E. Glass should acquire,' in lines 19 and 20, on page 3, to and including the words 'conveying to him the lot or lots so drawn by him,' in lines 11 and 12, on page 4, of said first count, and said first count within the limits aforesaid is herewith repeated and incorporated in this seventh count, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

It was with respect to counts 2, 3, 4, and 7 only of the indictment that the government introduced evidence on the trial, resulting in the conviction of each of the defendants under those counts—the judgment against Glass, the plaintiff in error here, being that he be "imprisoned in the King county jail, or in such other place as may be hereafter provided for the imprisonment of offenders against the laws of the United States, for the term of 60 days on each count, each sentence to run concurrently in all counts, at hard labor, from and after this date, and that he pay a fine of $300 on each count, totaling $1,200, and that execution issue therefor, and that he be further imprisoned in the said King county jail until such fine is paid, or until he shall be otherwise discharged by due process of law."

The offenses charged in the first and fifth counts of the indictment were held by the court below to be barred by the statute of limitations, and, as respects counts 6, 8, and 9, the government introduced no testimony, and the verdict was accordingly in favor of the defendants under them.

The bill of exceptions shows that in the latter part of 1908 Ridgway and Glass caused the Jovita Land Company to be incorporated, of which the former became president and the latter secretary and treasurer, and which corporation they dominated and controlled. To it they caused to be conveyed a tract of land of about 500 acres in extent, and had it platted into lots and block; there being 2,713 lots, ranging in size from 40 by 120 feet to 2½ acres. The company proceeded to improve the property by clearing the land, building houses, grading streets, and building sidewalks, and offered it for sale, in part by means of circulars and letters sent through the United States mail by direction of Ridgway and Glass; each undivided interest in the property being offered for the uniform price of $130, the sales made being evidenced by a written contract which did not specify any particular lot or lots, but stated "that, after all the land had been sold, the purchasers or their representatives should meet upon the property, and at that time the Jovita Land Company would deliver to the purchasers or their representatives deeds to all the property so sold by the Jovita Land Company and purchased by the lot buyers, at which time the lot buyers could divide the property among themselves." Prior to July 4, 1910, the land company caused notice to be given to the lot buyers of the appointment of certain representatives who would act for the contract holders and who were requested to meet on the day mentioned on the land of the company, and on that day a meeting was there had, at which were present several hundred of such contract holders or their representatives, to whom Ridgway announced that the land company was ready to turn over deeds to such trustees as they might select. Five trustees were then thus chosen, to whom Ridgway then delivered "deeds to each and every lot or tract of the property sold," taking the receipt of such trustee therefor, which deeds, "covering substantially all of the 2,713 lots to be distributed, had prior to the drawing been prepared and signed and acknowledged by the defendant W. A. Ridgway. These deeds were executed in blank form as to the name of the grantee in each case. On the day of the drawing, many of these deeds so prepared were by the employés of the company at the time filled in and actually distributed to the grantees selected by lot at the drawing, and thereafter from

time to time the remaining number of deeds were sent through the mails and distributed from the offices of the company to the various and numerous alleged purchasers in various parts of the district and surrounding country."

Immediately after the deeds had been so delivered by Ridgway to the trustees, the latter "proceeded to divide the property among the purchasers by drawing lots therefor, in the following manner: The name of each purchaser had prior to the day of the drawing been written upon separate cards and placed in a box, which revolved upon an axis. Upon other cards had been written the description of each lot or tract of ground contained in the 500 acres, known as 'Jovita,' and placed in another similar box; that is to say: If there were 2,713 lots sold, there were 2,713 names put in one box, and in another box there were placed 2,713 cards, on each of which was written the description of a lot. These five trustees then drew one name from one box and at the same time drew a card containing the description of a lot from the other box, and the purchaser whose name was drawn from one box was given a deed to the property described on the card drawn from the other box at the time his name was drawn."

There was evidence given going to show that the appliances for such drawing were prepared and the drawing itself was made by direction of Ridgway and Glass, and there was evidence tending to show that what few cottages were built upon the few small lots could be built for from $600 to $1,000 each, and that the 40-foot lots were not worth more than from $4 to $10 each, and that the acreage lots were not worth to exceed $75 per acre.

F. E. Hammond, of Seattle, Wash., for plaintiff in error.

Clay Allen, U. S. Atty., of Seattle, Wash., and G. P. Fishburne, Asst. U. S. Atty., of Tacoma, Wash., for the United States.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge (after stating the facts as above). Section 3894 of the Revised Statutes reads as follows:

"No letter or circular concerning (illegal) lotteries, so-called gift concerts, or other similar enterprises, offering prizes, or concerning schemes devised and intended to deceive and defraud the public for the purpose of obtaining money under false pretenses, shall be carried in the mail. Any person who shall knowingly deposit or send anything to be conveyed by mail in violation of this section shall be punishable by a fine of not more than five hundred dollars nor less than one hundred dollars, with costs of prosecution."

And section 213 of the Criminal Code, so far as applicable, is in these words:

"No letter, package, postal card, or circular concerning any lottery, gift enterprise, or similar scheme offering prizes dependent in whole or in part upon lot or chance, * * * shall be deposited in or carried by the mails of the United States, or be delivered by any postmaster or letter carrier. Whoever shall knowingly deposit or cause to be deposited, or shall knowingly send or cause to be sent, anything to be conveyed or delivered by mail in violation of the provisions of this section, or shall knowingly deliver or cause to be delivered by mail anything herein forbidden to be carried by mail, shall be fined not more than one thousand dollars, or imprisoned not more than two years, or both; and for any subsequent offense shall be imprisoned not more than five years. * * *"

It is contended on behalf of the plaintiff in error that counts 2 and 7 of the indictment are based upon section 3894 of the Revised Statutes, and that counts 3 and 4 are based on section 213 of the Criminal Code; that the first-mentioned section defines a misdemeanor and the last a felony; and that a misdemeanor and a felony cannot be included in the

same indictment, and therefore the demurrer to the indictment should have been sustained; and further that each count is bad for duplicity in that, as the defendants thereto are charged with "depositing" and "causing to be deposited" the letters and circulars, "two separate crimes are charged"; that it is not charged that the defendants knew the contents of the letters or circulars; that it is not specifically charged that the defendants "knew the letters were concerning a scheme offering prizes," and, as respects counts 3 and 4, that the scheme alleged is not a scheme "similar to a lottery or gift enterprise offering prizes dependent upon lot or chance," nor is it alleged that the letters charged to have been deposited "concerned a scheme similar to a lottery offering prizes."

[1-3] We see no merit in any of those contentions. Each of the counts is good under either of the sections of the statute that have been quoted. Whether section 3894 of the Revised Statutes is merged in section 213 of the Criminal Code (which latter is undoubtedly an enlargement of the provisions of the former statute) we are not called upon to decide in this case, for the reason that the punishment imposed upon the plaintiff in error is much less than that prescribed by the latter statute. It is apparent that each of the counts in question was treated in the court below as being based upon section 3894 of the Revised Statutes, as the plaintiff in error was only sentenced to imprisonment under each count for 60 days and a fine of $300, whereas the punishment prescribed by section 213 of the Criminal Code is much heavier. The plaintiff in error, therefore, has no right to complain of the extent of the punishment.

We say that each of the counts here in question is good under either of the sections of the statute quoted, for each of them alleges in effect that the instrument alleged to have been willfully, knowingly, unlawfully, and feloniously deposited by the defendants in the mail concerned a scheme dependent upon lot or chance carried on through a corporation organized and controlled by the defendants, and was intended to promote, aid, and further the said scheme, which scheme is specifically set out and shows upon its face that it was dependent upon lot or chance, and was designed and calculated to deceive and defraud the unwary in an endeavor to obtain money from them under false pretenses.

[4] All of the counts here in question refer, as they properly may, to the scheme set out in the first count. Blitz v. United States, 153 U. S. 308, 14 Sup. Ct. 924, 38 L. Ed. 725; Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097. The scheme so set out in effect offered prizes dependent upon lot or chance, for, as has been shown, the various lots and parcels into which the land was divided were of grossly unequal values. Yet each purchaser was to and did pay precisely the same amount, $130. Those at least who paid $130 each for the hundreds of lots that the evidence tended to show were only worth from $4 to $10 each doubtless had no more difficulty than have we in concluding that the very few lots upon which houses were built were indeed prizes to those who were lucky enough to draw them.

[5] That all of the acts charged against the defendants to the in-

dictment were connected together and concerned the same transaction, and were therefore of the same class of offenses, is clear, and that such acts and transactions may be included in the same indictment is expressly provided by statute; section 1024 of the Revised Statutes declaring:

"When there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments the whole may be joined in one indictment in separate counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

The judgment is affirmed.