## RIDDELL v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. August 6, 1917. Rehearing Denied October 8, 1917.)

### No. 2877.

1. POST OFFICE ⬅️48(4)—USING MAILS TO DEFRAUD—INDICTMENT.

An indictment for using the mails to defraud *held* sufficient to state an offense, where it charged that defendant and others devised a scheme to subdivide and sell tracts of practically worthless land in small tracts for orchard purposes, and carried out the same by means of letters, circulars and copies of photographs sent through the mails, which fraudulently misrepresented the land as to its location, character, and value.

2. POST OFFICE ⬅️48(4)—USING MAILS TO DEFRAUD—INDICTMENT.

An indictment for using the mails for carrying out a scheme to defraud, which sets out the scheme in detail in the first count, may, in other counts, describe it by reference to the first.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. CRIMINAL LAW ⊖⊃371(1)—PROSECUTION FOR USING MAILS TO DEFRAUD—EVIDENCE.

　　In a prosecution for using the mails to defraud, where the evidence showed that defendant and others devised a scheme to subdivide ·certain lands which were practically worthless and sell the same by means of advertising matter sent through the mails, but that they afterward and more than three years prior to the indictment abandoned such lands and substituted other land to which they transferred the .contracts of purchasers, and which they also fraudulently misrepresented, evidence of their acts and representations with respect to the first lands was admissible with proper instructions on the question of intent.

4. CRIMINAL LAW ⊖⊃825(1)—PROSECUTION FOR USING MAILS TO DEFRAUD—INSTRUCTIONS.

　　Instructions given on the trial of a defendant charged with using the mails to defraud *held* proper and sufficient, in the absence of request for ·more specific instructions.

　　In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

　　Criminal prosecution by the United States against H. H. Riddell. Judgment of conviction, and defendant brings error. Affirmed.

　　The plaintiff in error was defendant in the court below to an indictment charging that at a certain time and place within the jurisdiction of the court the defendant, together with one Conway and one Richet, devised and intended to devise a scheme and artifice to defraud one Mrs. Patsy Doran, and other persons to the grand jurors unknown,· and to obtain from them and each of them money and property, which scheme and artifice the indictment alleged to be, in substance, this:

　　That the defendant, and Conway and Richet, acting personally and as officers of an Oregon corporation, called Oregon Inland Development Company, would falsely and fraudulently pretend, represent, promise, and hold out to said Mrs. Doran and other persons to the grand jurors unknown, and to the public generally, that the company was the owner of 40,000 acres of land in Oregon which it and its said officers intended to and would subdivide into 3,086 farms of the following numbers and sizes, to wit, 2,712 farms of 10 acres each, 200 of 20 acres each, 150 of 40 acres each, 20 of 80 acres each, 2 of 160 acres each, one of 320 acres, and one of 640 acres; that the company was the owner of 3,086 town lots in the town site of Klamath Falls, Or., and that the said defendant and his said associates and the said company would sell one farm and one of the town lots for $240, payable $10 down and $10 each month until fully paid, and, further, that the entire 40,000 acres was farm and fruit land of high quality constituting parts of sections 16 and 36, and situate in Baker, Crook, Curry, Douglas, Grant, Harney, Jackson, Klamath, Lake, Linn, Lincoln, Malheur, Sherman, Union, Umatilla, Wallowa, Wasco, and Wheeler counties. That the said lands were adjoining and contiguous in many instances to lands then being farmed and planted with fruit trees, and that the lands so pretended to be owned by the company were also fruit and orchard lands. That the said 40,000 acres, and the said 3,086 town lots, were owned in fee by the company, and that any person or persons purchasing under contracts offered for sale by the defendant and his said associates and the said company would receive good title thereto. That deeds to the said 40,000 acres which vested title thereto in the company had theretofore been executed by John Veasen and Lulu Veasen, husband and wife, under date April 25, 1910. That the said scheme and artifice was to be further executed by the said defendant and his said associates and the said company, increasing the price to be paid by the purchasers .from $240 to $300 for each tract, and by falsely and fraudulently printing, issuing, circulating, and distributing a certain illustrated booklet entitled, "Grande Ronde District, Oregon," which booklet contained, among

⊖⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

other things, a pretended map of Union and Wallowa counties, and of portions of Baker county, Or., which map had large portions of those counties identified in red colors. That the defendant and his said associates would and did further falsely and fraudulently pretend and hold out to the persons aforesaid and to the public generally that each of the townships on said map outlined in red contained 10 and 20 acre tracts and farms owned by the company, and were neither mountainous nor swamp lands. That the town lots so represented to be owned by the company were contiguous and adjacent to the town of Klamath Falls and a part of it, and that each of the lots was worth the "amount of the selling price of the contracts of said company," whereas, in truth and in fact and as the defendant then and there well knew, the said lots were not contiguous or adjacent to the town of Klamath Falls nor a part thereof, and were not less than a mile and a half distant from the nearest portion of the town, and not less than two miles from its business portion, were not of the value represented, and were and are of little or no value. That in furtherance of the scheme and artifice and as a part and portion thereof the defendant and his said associates would and did cause to be printed, mailed, circulated, and generally distributed large numbers of a certain poster which had written across it in bold red ink "Grande Ronde District, Oregon," and which poster had delineated upon it numerous half-tone reproductions of photographs named, labeled, and described by the designations, "Native Hay Scene on our Land near Promise," "Scene on our Land in Baker County, Note the Deep Soil on Creek Bank," "Trout Stream Crossing One Corner of our 20-Acre Tract Southeast of Elgin," "Scene on our Land West of La Grande," "Part of our Land Near Enterprise," "Part of our Land Near North Powder," "Part of our Land in Baker County Showing Creek," "Scene on One of our 40-Acre Tracts Near Imbler," "Part of our Land Near La Grande, Note the Gentle Slope," which statements, labels, legends, and delineations were false, fraudulent, misleading and untrue in every part as he, the said defendant, then and there well knew, and when, in truth and in fact, as the said defendant then and there well knew, the said company did not own or have any lands in either Baker or Wallowa county, Or., and when in truth and in fact, and as the said defendant then and there well knew, the cut and reproduction labeled "Native Hay Scene on our Land Near Promise" was not a reproduction of a scene on any land owned by said company, and when in truth and in fact, and as the said defendant well knew, the said company had and owned no lands near Promise. with similar allegations respecting the other labels and designations, and when in truth and in fact, as he, the defendant, then and there well knew, the said company was not the owner of 40,000 acres of farm land in the state of Oregon, nor of 3,086 town lots in the town site of Klamath Falls, Or., and when in truth and in fact, as the defendant then and there well knew, the said 40,000 acres of land so claimed to be owned by the company was not only not farm or fruit land of high quality, but was "high, bleak, cold, rocky, nonarable, nontillable, scab, and mountainous land fit only for use as grazing land, and totally unfit for orchard culture and cultivation." That the lands contiguous to and adjoining the said 40,000 acres so claimed by the said company were not, as the defendant well knew, capable of being farmed or planted with fruit trees, and that in truth and in fact, as the defendant then and there well knew, the deeds so claimed to be executed by said John Veasen and Lulu Veasen did not vest title to the lands therein described in the said company, for the reason that the said deeds were to be placed in escrow and were never delivered to the said company, or to any representative thereof. That in truth and in fact the said company owned and owns, as the said defendant then and there well knew, no lands in either Baker or Wallowa counties, Or., and owned lands in but six of the said townships so designated in red, and when in truth and in fact, and as the said defendant then and there well knew, the said 10 and 20 acre tracts advertised for sale in and by the circular and pamphlet entitled "Grande Ronde District, Oregon," were not only not orchard lands of high grade and quality, but were "high, bleak, rough, rocky, frosty, nonarable, nontillable, and inaccessible mountainous lands." That the said scheme and artifice was

made and entered into by the defendant and the said Conway and Richet to defraud the said Mrs. Doran and other persons to the grand jurors unknown and the public generally. That in pursuance of it the indictment alleges in count 3, at a time and place stated, the defendant knowingly, unlawfully, and feloniously placed and caused to be placed in the post office at Portland, Or., for mailing and delivery, a certain letter reading as follows:

"Oregon Inland Development Company Incorporated. 1121-1122-1123 Yeon Building. Address All Communications to the Company. Phone Main 133. Frank Richet, President Treasurer. J. T. Conway, Pres. & Gen'l Mgr. H. H. Riddell, Secretary.

"Portland, Oregon, 6/26/11.

"W. C. Hayward, Manilla, Iowa—Dear Sir: The sale of our contracts on the auction plan will close in the very near future. We are placing on the market and have sold several ten acre tracts, which we are selling on terms of $10 down and $10 per month without interest or taxes. The purchase price being $300 per tract. There is no town lot in connection with this new proposition. It is a straight purchase of a specified ten acre tract. We have decided to permit a number of our present contract holders on the auction plan to select one of these ten acre tracts in lieu of their present contracts; crediting them with the amount they have previously paid together with discount, if any, to apply on the purchase of a ten acre tract. In addition to this, they will receive a town lot at Klamath Falls when the same is allotted as per their original contract.

"In addition to these $300 tracts we have some higher priced lands that are selling at $400 and $500 per tract. We will also, upon request, accept transfer of the present contracts to apply on these higher priced lands. Contract holders may at their pleasure select a representative at their own expense and send him to La Grande from which point we would take him to make inspection and selection—for his people. We cannot, however, hold a large body of this land off the market unless some action is taken immediately. We herewith inclose plats of 32 ten acre tracts. We are writing our representative in Iowa, M. Hillias, 505 W. Broadway, Council Bluffs, Ia., and would suggest that you work in conjunction with him inasmuch as it would prevent two people selecting the same tract. He can arrange for you to have your acreage adjoining that of a neighbor if you and they so desire. We wish to urge upon you the necessity of immediate action inasmuch as that if you fail to take advantage of this offer at this time, and decide later that you wish a specified ten acre tract, it will of course necessarily be located farther out than our present offerings, and we cannot at this time agree to transfer your contract if you do not make immediate application. Call and see Mr. Hillias at once and oblige,

"Yours very truly,            Oregon Inland Development Company,
                            "J. T. Conway, Vice-Pres. & Gen. Mgr."

Counts 4 and 5 of the indictment allege that the defendant, in further pursuance of the said alleged scheme and artifice, at certain specified times deposited, or caused to be deposited, in the post office at Portland certain specified "clearance receipts" relating to the sale of portions of the alleged lands of the alleged schemers, one alleged to have been issued in favor of E. H. Bryant of Gallup, N. M., and the other in favor of J. K. Hartline, of Albuquerque, N. M.

The indictment originally contained seven counts, to the last two of which a demurrer was sustained, and respecting the first two of which there was no proof of the deposit in the mails of the letters as therein alleged.

The trial resulted in the conviction of the defendant under counts 3, 4, and 5, and he has brought the case here by writ of error.

E. B. Dufur and Giltner & Sewall, all of Portland, Or., for plaintiff in error.

Clarence L. Reames, U. S. Atty., and John J. Beckman, Asst. U. S. Atty., both of Portland, Or.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1] The contention that the indictment is insufficient to state an offense under the provisions of section 215 of the Criminal Code, upon which it is based, is, we think, wholly without merit. Indeed, it is difficult to conceive of a more brazen attempt to defraud the unwary of their money than it sets forth. Durland v. United States, 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709; Oesting v. United States, 234 Fed. 304, 148 C. C. A. 206; Walker v. United States, 152 Fed. 111, 81 C. C. A. 329; Moffatt v. United States, 232 Fed. 522, 146 C. C. A. 480; Colburn v. United States, 223 Fed. 590, 139 C. C. A. 136; Spear v. United States, 228 Fed. 487, 143 C. C. A. 67.

[2] It is true that neither of the counts under which the plaintiff in error was convicted set out the alleged fraudulent scheme in detail, but each of them refer to and make part thereof, as they properly may, the scheme set out in the first count. Blitz v. United States, 153 U. S. 308, 14 Sup. Ct. 924, 38 L. Ed. 725; Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097; Glass v. United States, 222 Fed. 773, 138 C. C. A. 321.

The record shows that in the execution of the alleged scheme the company, under the directorship of its officers—Conway, Richet, and the defendant—secured many thousands of dollars, for which acts the two former have heretofore, upon a similar indictment, been convicted.

The plaintiff in error insisted in the testimony given by him that he was entirely ignorant of the true character and situation of the lands in question, and, while admitting that he was a stockholder and the secretary of the company, testified that the stock that he held was for the benefit of Veasen, and that his only interest in the company was the salary he received as its attorney. That his private office adjoined and opened into that of the company; that he was active in the performance of his duties as its secretary, and himself framed or examined many of the letters, circulars, posters, and other papers issued by the company—was also admitted by him in his testimony, and there was on the part of the government much evidence given, tending to show that he was in fact a party to the alleged unlawful undertaking. That question of fact was, of course, left to the determination of the jury by the trial court, and under fair and correct instructions upon the point, and was resolved by the jury against the defendant.

There are but two more alleged errors occurring on the trial that we think need be specially mentioned.

[3] It appeared from the evidence in the case that the company was organized for the purpose of exploiting the lands covered by the deed alleged in the indictment to have been executed by John Veasen and his wife April 25, 1910, but never delivered, and that in the fall of that year the company and its officers—Conway, Richet, and the defendant—ceased all efforts in regard to those lands, and transferred them to lands situate in Union, Wallowa, and Baker counties of the same state, for which the company had entered into a contract with one Hibbard, the holders of contracts for the purchase of the Veasen lands

being notified by the company that they would be given in lieu thereof similar contracts for the purchase of the Hibbard lands.

It is urged that the court below erred in admitting in evidence acts of the company and its officers respecting the Veasen lands. While, as the court below expressly instructed the jury, the defendant could not be convicted for any act or acts committed in respect to those lands, since all such acts ceased more than three years before the filing of the indictment, the acts of the company and its officers in regard thereto were, in our opinion, clearly admissible upon the question of the intent with which their acts in regard to the Hibbard lands were performed; for the scheme alleged in the indictment was continuous in character, and applied to the lands situate in Union, Wallowa, and Baker counties, as well as to the Veasen lands. That the evidence objected to was properly limited by the court below clearly appears from this excerpt from its charge:

"The evidence concerning the organization of this corporation and its transactions during the time that it was exploiting the Veasen lands has been admitted, and is to be considered by you in order that you may ascertain and determine the nature and character of the business in which these people were engaged, and whether or not it was a fraudulent scheme; but, even if you should believe that up to the time the parties began operating in Eastern Oregon the scheme was fraudulent and a violation of the statute, it would not justify you in convicting the defendant, unless you should believe further that, after the company began operating in Eastern Oregon, it continued to maintain and operate as a fraudulent scheme and with intent to defraud the parties with whom it thereafter contracted. The acts set up in the indictment are charged as having been done on a certain date stated therein. The government is not confined in its proof to the dates set forth in the indictment, but it is bound, under the statute of limitations, to prove that the acts of the defendant on which a conviction is asked took place within three years prior to the finding of the indictment. Unless, therefore, you can find from the evidence beyond a reasonable doubt that subsequent to the 23d day of May, 1911, there was a fraudulent scheme and device, as set out in the indictment, and that the defendant was a party thereto, and that subsequent to that date he mailed, or caused to be mailed, one or more of the writings heretofore specified in the charge of the court, you must necessarily find him not guilty. Your inquiry, therefore, will be largely confined to a consideration of the nature and character of the business in which these people were engaged while they were exploiting the Union county lands, but in determining such nature and character, you have a right, as I suggested a moment ago, to consider the entire transaction, the circumstances under which the corporation was organized, the purpose for which it was organized, how it was organized, how it was conducted, and from that determine whether they were carrying on an unlawful scheme to defraud in exploiting the Union county land, and within three years prior to the finding of this indictment."

In the similar case of Samuels v. United States, 232 Fed. 536, 542, 146 C. C. A. 494, 500 (Ann. Cas. 1917A, 711), the Circuit Court of Appeals of the Eighth Circuit, in speaking of the admission in evidence of certain letters, circulars, and advertisements which were not referred to in the indictment, said:

"As the fraudulent intent is one of the material allegations in the indictment, evidence of other and similar ventures by the accused are properly admissible as bearing on the question of intent. The intention of a person charged with a crime can hardly ever be shown by direct evidence, and for this reason it is permissible to introduce evidence of other acts of a similar nature,

especially when committed continuously, and for a long period of time, thereby establishing the fraudulent intent."

In addition to the authorities there cited, see Farmer v. United States, 223 Fed. 903, 911, 139 C. C. A. 341; Stern et al. v. United States, 223 Fed. 762, 139 C. C. A. 292; Sprinkle v. United States, 141 Fed. 811, 816, 73 C. C. A. 285; Shea v. United States, 236 Fed. 97, 149 C. C. A. 307.

[4] The only other point that we think merits special notice is the contention on the part of the plaintiff in error that the effect of the instructions of the court below was that the jury was authorized to find the defendant guilty (as it did) under counts 3, 4, and 5, even though he only deposited, or caused to be deposited, in the post office one letter. It is quite true that each letter or other paper put into the post office in violation of the provisions of the statute constitutes a separate and distinct offense (In re Henry, 123 U. S. 372, 8 Sup. Ct. 142, 31 L. Ed. 174), and that there could be no legal conviction of the defendant under any count of the indictment without proof of the deposit in the mail of the letter or document therein charged to have been so deposited; and such, we think, is the true meaning of the instructions given by the court when read together, as they must be; and such, we think, must have been the understanding of the jury. Indeed, the court expressly charged the jury to disregard (as they did) the first two counts of the indictment, for the very reason that the government offered no evidence tending to show that the letters alleged in those counts to have been deposited, or caused to be deposited, by the defendant were in fact so deposited. If the defendant desired any more specific instruction upon the subject, he should have taken exception to the charge of the court at the time, bringing to its notice the ground of such exception, which, according to the record, he wholly failed to do.

The judgment is affirmed.